## J. H. PARR v. THE STATE.

### No. 1486. Decided December 2nd, 1896.

**1. Murder—Evidence—Acts and Declarations of a Co-Conspirator—Res Gestæ.**

On a trial for murder, where it appeared, that directly after the shooting the son of defendant rushed up to where deceased was lying, and said: "You are going to die and go to hell," which act and declaration the State, over objection of defendant, was permitted to prove. Held: If the act and declaration was that of a co-conspirator, immediately after the fatal shot was fired, it was admissible in evidence as part of the res gestæ; if there was no conspiracy between the parties, it was inadmissible and injurious.

**2. Same—Charge as to.**

Where, upon a trial for murder, there is testimony tending to establish a conspiracy between two parties to commit the murder, and the acts and declarations of the co-conspirator are permitted in evidence as part of the res gestæ, the court should instruct the jury to find whether or not a conspiracy existed; and, if they found such to be the case, then they might regard the testimony as part of the res gestæ, otherwise, they should disregard it altogether.

**3. Accomplice Testimony—Duty of the Court to Charge in Regard Thereto.**

On a trial for a felony, if there is testimony tending to show that any witness, upon whom the State relied for a conviction, was an accomplice, it is the duty of the court to give in charge to the jury the rule governing accomplice testimony, and this, whether the court was requested to do so or not, or whether the charge given was excepted to for failure to do so.

APPEAL from the District Court of Fayette. Tried below before Hon. H. TEICHMULLER.

Appeal from a conviction for murder in the second degree; penalty, five years' imprisonment in the penitentiary.

The indictment charged defendant with the murder of West Graftington, in Fayette County, on the 1st of September, 1895, by shooting him with a gun.

On Sunday, September 1st, 1895, two negroes were playing cards, about 11 or 12 o'clock, in a gambling room, back of Hugh Little's saloon, in the town of Winchester. Defendant (J. H. Parr), who was a white man, was present, looking at the game. He and the deceased got into a controversy, as to how many points deceased had made in the game. Finally, deceased said: "You have been mouthing about this game long enough, and you have got to stop it." And, he picked up a black beer bottle, and said: "White man, I am not afraid of you," and drew back as if to strike defendant. Defendant said: "You can hit me, if you want to"—and then he left and got on his horse, and started to his home about two and one-half miles from town. Defendant's son testified that he came home, eat his dinner, stayed about one-half or three-quarters of an hour; that he told him about the difficulty with the negro, and said he was going back to town. That he and his father got their horses and went back to town, his father carrying a double-barreled shotgun with him. This witness claims not to have been present at or to have seen the shooting. Other eye-witnesses to the transaction state, that defend-

ant appeared at the gambling room, back of the saloon, with his gun in his hand, and seeing deceased, said: "I am ready, or I suppose you are ready to settle that difficulty." Deceased sprang into the door of the saloon and got behind the wall or partition in the saloon. One witness swears, that deceased drew his pistol and fired first out of the door, at defendant; others testify that defendant fired first—through the partition wall—hitting him in the face and neck. That deceased then fired one shot at him, when defendant fired the second shot. Deceased then dropped his pistol, ran out of the front door of the saloon, and ran about 100 feet and fell. While he was yet breathing, and just before he died, Henry Parr, the son of the defendant, came out of the saloon to where he was lying, and looking at him, said: "Now, God damn you, you are now dying, and going to hell." Defendant was standing in front of the saloon at the time, but not near enough to hear his son's remark. Defendant objected to this evidence of the acts and declarations of his son, but the evidence was admitted over his objection.

[No briefs for either party have come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and given five years in the penitentiary, and prosecutes this appeal. A number of exceptions were reserved by the appellant during the trial of the case. However, we will notice only two of them. One is to the testimony of Jim Washington, a witness for the State, who testified that Henry Parr, a son of the defendant, went to the place when the deceased fell, after receiving a mortal wound, about 100 feet distant from the place of the shooting, immediately after the shooting, and there said, apart from the defendant, and in his absence, "You are going to die, and go to hell." The defendant objected to the introduction of this evidence, because it in no way proved the guilt of this defendant, but was mere hearsay, and would inflame the minds of the jury, and prejudice him with the jury. The court overruled the objection, and permitted the witness to state it as res gestæ. The other exception is to the refusal of the court to give a charge to the jury on accomplice's testimony. Appellant, as to this, insisted that the State had introduced Henry Parr, a son of the defendant, as a witness for the State; and then, in the argument to the jury, the State treated said witness as an accomplice. As to the first bill of exceptions, involving the admission of the declaration of Henry Parr, a son of the defendant, made shortly after the homicide, we would observe that, if said Henry Parr be regarded as a co-conspirator in the homicide, with his father, J. H. Parr, and said declaration was made pending the conspiracy, and in furtherance thereof, or while the object of the conspiracy was being accomplished, and as a part of the res gestæ thereof, it might be admissible as evidence against the appellant. If we look to the record outside of the bill of exceptions—that is, to the statement of facts—there is

some testimony tending to show that said Henry Parr was acting in concert with the defendant before the homicide. The testimony tends to show that the defendant, after having the difficulty with the deceased in the morning, went to his home, some two or three miles from the village of Winchester, where the homicide occurred, and a short time after arriving there he and his son returned together to Winchester, carrying a gun with them. This son testifies that his father told him about having the difficulty with deceased in Winchester after he got home, "and that it looked to him like every time he went over there some negro would curse him out, and threaten him; and that hereafter he would carry his gun with him." The testimony also tends to show that immediately preceding the act of shooting the son seemed to be acting in concert with his father, and directly after the shooting, and before the deceased had breathed his last, he rushed up to where deceased was, and made the exclamation contained in the bill of exceptions, to-wit, "You are going to die, and go to hell." If this expression came from a co-conspirator with the appellant (that is, one conspiring with him in the killing), made immediately after the fatal shot was fired, it was admissible as a part of the res gestæ. If, however, there was no conspiracy between appellant and witness (and the testimony is by no means certain as to that), then the declaration of the witness, Henry Parr, was no part of the res gestæ, and was not admissible against the appellant, and was of a character to greatly prejudice him before the jury. In our opinion, the court, in this connection, should have properly instructed the jury to find whether or not there existed a conspiracy between father and son to commit the homicide. If they found such to be the case, they then might regard the testimony as a part of the res gestæ; otherwise to disregard it altogether. If this testimony was admissible against the defendant, as said before, it was only admissible against him as the declaration of a co-conspirator. This co-conspirator was used by the State as a witness against the defendant, and testified to some criminative facts against him, and from the bill of exceptions it appears that in the argument of the District Attorney the said witness was alluded to by him as an accomplice with the defendant in the homicide. The court failed to instruct the jury in regard to accomplice's testimony in connection with said witness. Appellant excepted to this failure of the court. The court, however, explains that this bill of exceptions was not called to his attention until the motion for a new trial was made. But, regardless of any exception taken at the time, if there was testimony tending to show that any of the witnesses upon whom the State relied for a conviction were accomplices, it was the duty of the court to give in charge to the jury the rule governing accomplice testimony. See, Winn v. State, 15 Tex. Crim. App., 171; Howell v. State, 16 Tex. Crim. App., 93; Anderson v. State, 20 Tex. Crim. App., 312; Stone v. State, 22 Tex. Crim. App., 185; Boren v. State, 23 Tex. Crim. App., 28. Now, the case resolves itself down to these two propositions: If the witness, Henry Parr, was not an accomplice—that is, a co-conspirator in

the homicide with the defendant—then his declaration at the time of the homicide ought not to have been admitted; if he was an accomplice in the homicide, and testified for the State against the defendant, then it was the duty of the court, in connection with his evidence, to have given a charge to the jury on accomplice testimony. Certainly, after having admitted the declaration of Henry Parr as a part of the res gestæ, on the ground that he was acting with the defandant in the homicide— this witness being introduced against appellant by the State—the court should have given a charge on accomplice testimony. Because of the errors discussed, the judgment in this case is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, absent.