MACK MATTHEWS v. THE STATE.

No. 13100. Delivered March 26, 1930.

Reported in 26 S. W. (2d) 269.

The opinion states the case.

*Page & Powell* of Bastrop and *W. H. Murchison* of Haskell, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, five years in the penitentiary.

This killing happened at a negro emancipation celebration. The participants and practically all the witnesses were negroes. The testimony as to what happened is in its usual confused condition when given by members of this race. The substance of the dying declaration of deceased is that he was shot in the back by appellant while he was an observer of a difficulty between two other negroes. The State's testimony as well as that of the appellant shows that a controversy had occurred between Floyd Clark, the deceased, and Cairo Hyder on one side, and George Matthews, appellant's father, on the other; that thereafter Cairo Hyder approached the father of appellant, snapped a pistol in his face three times and attacked him. Up to this point the testimony is apparently in agreement but differs widely from this transaction on. Sufficient of the defensive facts to illustrate the law points discussed is as follows : George Matthews, father of appellant, was a man sixty-four years old suffering from

a rupture. The two negroes, Clark and Hyder, had a controversy with him over a trivial matter and left the grounds to get a pistol, threatening to kill him. They returned and approached the spot where Matthews was and Hyder attacked him with the gun as before stated. One of his teeth was knocked out and he was badly bruised. While Hyder had him down assaulting him, he was killed by Mack Matthews, the appellant, a boy twenty years old and weighing about 110 pounds. As George Matthews started to arise after the assault of Hyder, Clark attacked him and was shot and killed by appellant, and it was for this last killing that appellant was tried. Appellant's theory was that he shot in defense of his father, who was in danger at the time of death or serious bodily injury as a result of the assault of the two negroes, Hyder and Clark.

Paragraph 10 of the Court's charge is a literal copy, so far as applicable, of Art. 1222, P. C., pertaining to justifiable homicide. This was objected to as being in the abstract. The law of self-defense and defense of another is based in part upon this article and its reproduction is not error if followed by a pertinent application to the facts which raise the issue of defense of another. The Court's application was in the following language:

"Gentlemen of the jury, you are further instructed that the defendant had the right to defend his father against what appeared to him, viewed from his standpoint alone, at the time, to be an unlawful attack upon the person of his father. And you are further instructed that a reasonable apprehension of death from such an attack upon his father, or serious bodily harm to him, would excuse a party in using all necessary force to protect the life of his father, or his person from serious bodily injury. And it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint alone. Then the defendant had the right to shoot and kill the deceased; and if you so find, or if you have a reasonable doubt thereof you will acquit the defendant and say by your verdict Not Guilty."

We think the testimony for appellant sufficiently shows a continuous assault by Hyder and Clark upon appellant's father and clearly raised the issue that the two were acting together to kill or do serious bodily injury to his father. It further shows that deceased Clark was a vigorous, stout negro in his prime and weighing about 180 pounds. The two assaults were so closely related in point

of time and place as to make them inseparable from the standpoint of appellant. It has been oftimes held that a charge of the Court is too restrictive if it confines the right of self-defense to the acts of the deceased where there are more assailants than one. Branch's P. C., Sec. 1934; Cartwright v. State, 16 Tex. Crim. App. 487; Bean v. State, 25 Tex. Crim. App. 357; Black v. State, 145 S. W. 947. It may have reasonably appeared to appellant that his father was in much more danger at the hands of Clark, the deceased, because of the fact that he had immediately before been severely beaten and injured by Hyder, who was apparently acting with Clark; that is that due to his father's weakened condition from Hyder's assault, he could not thereafter immediately assimilate the punishment being administered by a strong man like Clark without great danger of death or serious bodily injury and so believing, he killed Clark. This theory should have in some way been concretely charged. We regard the paragraph last quoted as only an abstract statement of appellant's legal right to defend his father. It wholly fails to specifically give him such right of defense against more assailants than one, or to pointedly authorize the jury to take into consideration both assaults. Other portions of the charge refer only to the right of defense against Clark's attack. Appellant's exceptions to the charge are regarded as sufficiently raising the points discussed. In the case of Terrell v. State, 53 Tex. Crim. Rep. 609, it was held under a state of facts somewhat similar to this case that the Court should have instructed the jury that they might take into consideration appellant's knowledge of the relative strength of the parties. If it reasonably appeared to appellant at the time he shot and killed Clark that his father was in danger of death or serious bodily injury at the hands of Clark, viewing the situation alone from his standpoint and taking into consideration the relative size and strength of the parties and the previous attack of Hyder upon his father and so believing he shot and killed Clark, he was entitled to an acquittal and the jury should have been appropriately so instructed. Appellant's rights may perhaps as well also have been protected by properly charging on his right to defend his father against an attack by Clark or by both Clark and Hyder. That his rights are not properly protected without this phase of the case being in some way charged upon seems apparent and the Court's failure to do so is in our judgment reversible error.

Appellant contends that the Court erred in failing to instruct the jury that he was not bound to retreat. Appellant was not being

attacked and such a charge, if given, should be made to apply to his father. Dobbs v. State, 51 Tex. Crim. Rep. 117.

It is insisted that no proper predicate was laid by the State for the introduction of the dying declarations of deceased because it was not proven that he was of sane mind at the time it was made, as required by Art. 725, C. C. P., 1925. We find no direct evidence of his sanity as contradistinguished from insanity. We do not think the language of the statute contemplated so broad an inquiry. We find sufficient facts and circumstances to show that he was conscious and clear minded enough at the time to relate the circumstances of the killing. This is, we think, all the law requires. There is not the slightest suggestion that he was at the time insane. Downing v. State, 20 S. W. (2nd) 204; McKenzie v. State, 258 S. W. 833; Taylor v. State, 38 Tex. Crim. Rep. 563.

Appellant in addition specifically objected to the introduction of the last clause in the dying declaration, which is as follows: "After Mack shot me one of his sisters told him to kill me and then struck me in the head with a stick." His sister was in no way shown to have acted with appellant nor to have been a participant in the difficulty. It is not shown whether appellant did or could have heard this, or how long after the difficulty it occurred nor under what circumstances it happened. Clearly deceased under such facts could not have given this testimony as a witness if alive, and if not, it was inadmissible as a dying declaration. Roberts v. State, 5 Tex. Crim. App. 141; Warren v. State, 9 Tex. Crim. App. 629; Manley v. State, 62 Tex. Crim. Rep. 392. See also Parr v. State, 38 S. W. 180, which discusses the exact question. We doubt the sufficient seriousness of this to require a reversal and mention it only in view of another trial.

Nor do we think the conduct of the district attorney of so prejudicial a character as to be reversible error and since it is not again likely to occur, we forego discussion of same.

For the error in the charge above pointed out, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.