RICHARD FRANK v. THE STATE.

No. 13779.  Delivered April 27, 1932.

The opinion states the case.

*D. E. O'Fiel,* of Beaumont, *R. C. Roland,* of Houston, and *John A. Veillon,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—The offense is murder; the punishment, death.

Appellant, a negro, lived in the home of Lillie Armstrong, a negro woman, the testimony being to the effect that he roomed and boarded at said place. On the night of the homicide Leon Jacks and Otis Tate, negroes, went to the home of Lillie Armstrong for the purpose, according to their testimony, of visiting Lillie Armstrong's brother. The brother was absent, but appellant and Lillie Armstrong were at home. Leon Jacks and Otis Tate testified for the state, in substance, as follows: When they reached the home of Lillie Armstrong, Otis Tate called her and she got up and opened the door. Otis Tate walked into the house, while Leon Jacks remained on the porch, the door being open. Tate asked Lillie Armstrong for a cigarette. Appellant said that he did not want him to smoke any of his cigarettes. Whereupon Tate asked appellant if he had anything against him, and appellant replied that he (Tate) would not work. Lillie Armstrong said that the cigarettes belonged to her, as she had bought them with her own money. She took one of the cigarettes out of the package and started to hand it to Otis Tate. Appellant drew a gun from the apron of his overalls and shot at Otis Tate, who jumped behind the door. He then started shooting at Lillie Armstrong. Tate and Jacks ran away. They got an officer and returned to the scene of the homicide. Lillie Armstrong's young son testified for the state, in substance, that after his mother was shot she ran from the house into the alley; that appellant pursued her and cut and stabbed her with a knife; that she fell to the ground; that as the officers approached, appellant cut his own throat and fell down beside deceased; that appellant threw the knife away. Testifying in his own behalf, appellant declared that Otis Tate and Leon Jacks brought some whisky to Lillie Armstrong's house and started to drink it; that he advised the parties that he did not want any whisky there, as the officers might make a raid and arrest him (appellant); that Otis Tate became angry and jerked out his knife; that Leon Jacks struck him with a board and knocked him "kinda out of" his senses; that he secured a gun from the dresser drawer and shot at the parties in an effort to defend himself, with no intention of killing Lillie Armstrong;

that deceased ran in front of him when he fired his first shot at Otis Tate; that he owned no knife at the time and did not cut and stab Little Armstrong; that he did not know how it happened that she had received the knife wounds; that Otis Tate cut his (appellant's) throat. In her dying declaration, which was introduced by the state in rebuttal, deceased stated that the trouble came up over a cigarette, and that appellant and no one else shot and stabbed her. The son of deceased testified that deceased and appellant had had some words about money several hours before the homicide, but that they did not appear to be angry. Appellant offered several witnesses who testified that his general reputation for being peaceable and law-abiding was good. The state made no attempt to show the contrary. Other than the testimony touching the quarrel referred to, there was no evidence of any antecedent trouble between appellant and deceased. As far as the record reflects the matter, they were on good terms.

Appellant filed an application for continuance complaining that an attorney formerly employed by him had withdrawn from the case and that other attorneys representing him had not had sufficient time to prepare for trial. We think the bill presenting the matter does not present error, but refrain from discussing the matter because it will not likely arise on another trial.

Over objection that the answer constituted a conclusion, the arresting officer testified at the instance of the state that when he reached the scene of the homicide appellant showed him a little cut under his neck and fell down on his face and "possomed." The effect of the officer's testimony was a conclusion that appellant was simulating injury. It was appellant's theory, given support by his testimony, that Otis Tate had cut appellant's throat and seriously injured him. It was the state's theory that appellant had inflicted a superficial wound on his own throat. The conclusion of the officer tended to lend support to the theory of the state. The officer should have been restricted to telling what appellant did, or said. Upon another trial he should not be permitted to state his conclusions.

The son of deceased was permitted, over objection, to testify, in substance, that his mother and appellant prior to this homicide lived and slept together. Testimony showing motive for a homicide is always competent, even though it involves other offenses. Hamblin v. State, 41 Texas Crim. Rep., 135, 50 S. W., 1019, 51 S. W., 1111; Smith v. State, 44 Texas Crim. Rep., 59, 68 S. W., 267. The fact being that one of the two men who came into the house just prior to the homicide, was a man with whom deceased had lived at some former time, and that deceased was about to give to this man a cigarette, when appellant, apparently angered or his jealously aroused by the presence of the other man and the conversation between him and deceased, was moved to shoot deceased and cut her, would seem to us unquestionably to make admissible the statement of the boy, in substance, that there was adulterous relations between his

mother and appellant prior to the homicide. Weaver v. State, 43 Texas Crim. Rep., 340, 65 S. W., 534; Pannell v. State, 59 Texas Crim. Rep., 383, 128 S. W., 133; Anderson v. State, 53 Texas Crim. Rep., 347, 110 S. W., 54; Phillips v. State, 22 Texas App., 139, 2 S. W., 601; Porter v. State, 86 Texas Crim. Rep., 47, 215 S. W., 201; Reyes v. State, 55 Texas Crim. Rep., 422, 117 S. W., 152. We take it that this testimony was not offered as affecting appellant's reputation, but for the purpose of showing motive.

Appellant objected to the dying declaration of the deceased on the ground that she was not shown to have been of sane mind at the time of making the declaration. Among other things the statute (Code Cr. Proc., 1925, art. 725) provides that to render the declaration of a deceased competent evidence, it must be shown that "he was of sane mind at the time of making the declaration." Touching the construction given to this phase of the statute, we quote from Matthews v. State, 114 Texas Crim. Rep., 526, 26 S. W. (2d) 269, 270, as follows: "It is insisted that no proper predicate was laid by the state for the introduction of the dying declaration of deceased, because it was not proven that he was of sane mind at the time it was made, as required by article 725, Code Cr. Proc., 1925. We find no direct evidence of his sanity as contradistinguished from insanity. We do not think the language of the statute contemplated so broad an inquiry. We find sufficient facts and circumstances to show that he was conscious and clear-minded enough at the time to relate the circumstances of the killing. This is, we think, all the law requires. There is not the slightest suggestion that he was at the time insane. Downing v. State, 113 Texas Crim. Rep., 235, 20 S. W. (2d) 202, 204; McKenzie v. State, 96 Texas Crim. Rep., 564, 258 S. W., 832, 833; Taylor v. State, 38 Texas Crim. Rep., 563, 43 S. W., 1019."

Deceased was shown to have been conscious at the time the statement was made. Moreover, there is no suggestion in the record that she was insane at the time. Taking this, in connection with the statement itself, it is thought that under the authorities above referred to, the predicate was sufficient. However, in view of another trial, it is suggested that the requirements of the statute touching the predicate in the respect mentioned might be more fully complied with and save any question arising regarding the matter.

Appellant defended upon the ground that an assault was being made or was about to be made upon him by Tate and Jacks, and that in shooting at them he accidentally killed deceased. The court told the jury if they believed the killing occurred under such circumstances, "or had a reasonable doubt thereof," they should find appellant not guilty. Immediately following this defensive charge which properly incorporated "reasonable doubt" therewith, the court gave the following instruction: "If, however, you find from the evidence, after viewing the facts from the

standpoint of defendant at the time of the homicide that it did not reasonably appear to the defendant that he was in danger of losing his life, or suffering serious bodily injury at the hands of the said Tate and Jacks, and that he did not shoot deceased by accident or mistake, then and there at the time he shot the deceased, then if you should so find you will find against his plea of self-defense."

It was evidently the purpose of the court in giving the charge quoted to submit the state's theory of claimed self-defense. As understood by us, appellant excepted to the charge not because the state's theory was submitted, but directed his exception to the form of the charge itself, the objection being that it was argumentative, on the weight of the evidence, and shifted the burden of proof. In Nix v. State, 45 Texas Crim. Rep., 504, 78 S. W., 227, and Logan v. State, 46 Texas Crim. Rep., 573, 81 S. W., 721, Judge Davidson expressed the opinion that such a charge should not be given. However, a majority of the court reached the conclusion that it was not improper. In Neyland v. State, 79 Texas Crim. Rep., 652, 187 S. W., 196, it was held that such a charge was not a limitation upon the right of self-defense, but only a submission of the state's theory thereof. In the cases mentioned it was the propriety of giving a charge from the state's standpoint that was under discussion, and not the form of the charge given. The question as to whether the jury should have been told, in connection with such a charge, that they must believe from the evidence "beyond a reasonable doubt" that accused was not acting in self-defense before they should find against his said plea, does not appear to have been raised or discussed. We deem the exception to the failure of the court to require the state to disprove appellant's affirmative defense beyond a reasonable doubt to be well taken. In Regittano v. State, 96 Texas Crim. Rep., 477, 257 S. W., 908, Presiding Judge Morrow, speaking for the court, said: "It is believed, however, that where, as in the instant case, the defensive theory is an affirmative one—that is, where the connection of the accused with the homicide is conceded and justified by affirmative testimony given by the accused— when the matter is properly presented in the trial court, there should be embodied in the charge submitting the defense the information to the jury that, if they believed the affirmative defensive facts or have a reasonable doubt of their truth, an acquittal should result."

It has always been the holding of this court that it was not necessary for an accused to establish the truth of the defensive matters urged, but that it was sufficient if the evidence raised in the jury's mind a reasonable doubt thereof.

In the present case in charging self-defense from appellant's standpoint the jury was instructed that if they believed the affirmative defensive facts, or hand a "reasonable doubt" thereof, appellant should be acquitted; but immediately following it the court gave the charge complained of in

which he omitted to tell the jury that before they would be authorized to find against appellant on the issue of self-defense they must believe from the evidence "beyond a reasonable doubt" that the same did not exist. Surely if it is thought desirable in any case to give an instruction on the state's theory of a claimed affirmative defensive issue the jury should be given to understand that they cannot find against accused on such issues unless it is from the evidence beyond a reasonable doubt. There is no question but that the two charges in the present case are confusing, and that the last one had the effect of nullifying "reasonable doubt" in connection with self-defense from appellant's standpoint. In a case of such gravity as the one before us, we cannot say that the matter presented harmless error, but believe it calls for a reversal of the judgment.

In view of another trial, we call attention to the court's application of the law of self-defense. The jury was instructed in substance that if Tate and Jacks, or either of them, were about to attack appellant with a knife or stick of wood, and appellant under such circumstances shot deceased, they would acquit appellant. Of course, this charge does not present a correct proposition of law; however,. there was no objection to the charge. Appellant would not be justified in shooting deceased because of an attack from Tate or Jacks, unless deceased was in some way connected with the attack, or unless in defending against the assault from Tate or Jacks he fired at them and accidentally killed deceased. The court was undertaking to submit this theory of the case, but by oversight emitted a necessary element. Of course, this will be corrected upon another trial.

For the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

LATTIMORE, JUDGE.—I am in some doubt as to the gravity of the error in the charge for giving of which my associates think this case should be reversed, but this is a death penalty case, and upon the point involved may turn the taking by law of the life of a human being, and I find myself unwilling to go to the length of filling a dissent, hence concur in the reversal.