

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR–86,364–01 AND WR–86,364–02

### EX PARTE EDWARD LOUIS THOMAS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM HARRIS COUNTY

KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, YEARY, NEWELL, and WALKER, JJ., joined. ALCALA, J., concurred.

## O P I N I O N

A jury found Applicant guilty of two counts of aggravated assault against a public servant, and the trial judge sentenced him to concurrent terms of 40 and 35 years' imprisonment. His convictions were affirmed on appeal. *Thomas v. State*, Nos. 14-09-00592-CR & 14-09-00593-CR, 2010 Tex. App. LEXIS 6207 (Tex. App. Houston [14th Dist.] August 3, 2010, pet. ref'd) (mem. op., not designated for publication). The habeas judge, who did not preside over the trial, recommended that relief be denied. We agree

and deny relief.

## Background

According to the State's evidence, Houston Police Department detectives Tim Butler and Michael Hamby, who were dressed in plainclothes, took a lunch break at the Asian City restaurant in Humble. Returning to their unmarked car they found Applicant in their driver's seat with the door open and another car backed into the space next to theirs. The drivers' doors of the cars were next to one another, and the second car's engine was idling.

The officers drew their weapons, verbally identified themselves as police officers and ordered Applicant to get out of the car and on the ground. He instead slid into the car next to theirs, revved its engine and lurched forward, clipping Hamby's right leg; then he veered left toward Butler, throwing him onto the hood of his car. Butler fired at Applicant through the front windshield and fell off the car. Applicant then drove toward Hamby who fired at Applicant until the car drove over a curb and stopped in the bushes. Applicant got out of the car and dropped to a knee as the officers continued ordering him to the ground. He stood up, asked for an ambulance and reached under his shirt, prompting Butler to shoot at him several more times.

The defense theory was that Hamby and Butler shot Applicant out of anger for burglarizing their car, and they concocted the story that he tried to run over them in order to justify shooting him. Part of the trial strategy was to show a conspiracy between the

Houston and Humble police departments. The defense relied on, among other things, physical evidence, 911 call records, and the scene video to contradict the officers' version of events and support the defense theory.

## Ineffective Assistance of Counsel: Standard of Review

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that his defense was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Deficient performance means "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A reviewing court must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. *Id*. at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690). That evaluation "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S.Ct. at 790. It depends on the totality of counsel's representation and the facts of the particular case at the time of the trial, not hindsight. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 690).

To demonstrate prejudice from an attorney's deficient performance, the defendant

must show a reasonable probability that the jury's decision would have been different absent counsel's errors. *Strickland*, 466 U.S. at 694. In the context of guilt-phase errors, that means "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" and requires a review of the totality of the evidence. *Id*. at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

Applicant argues that *Strickland*'s prejudice standard does not require a reasonable probability that, but for counsel's errors, the defendant would have been acquitted. He claims that "the issue is whether he received a fair trial that produced a verdict worthy of confidence." The "worthy of confidence" language, however, informs the "reasonable probability" aspect of the prejudice inquiry, not the "different result" question. *See*, *e.g.*, *Hinton v. Alabama*, 571 U.S. 263, ___, 134 S.Ct. 1081, 1089 (2014) (per curiam) (prejudice question in the context of guilt-phase attorney error "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.") (quoting *Strickland*, 466 U.S. at 695).

As detailed below, although the attorney made some mistakes, his deficiencies did not prejudice the trial's outcome, and Applicant's ineffective assistance claim fails *Strickland*'s two-prong test. *Strickland*.

**Deficient Performance Allegations**

Applicant claims his attorney was deficient in the guilt phase by: failing to object to, opening the door to or eliciting certain testimony, and failing to object to closing argument that was outside the record.

## 1. Failure to Object to Testimony

Applicant cites four instances in which his attorney failed to object to testimony: (a) Butler's opinion that Applicant knew that he and Hamby were police officers; (b) crime scene officer Domingo Villarreal's opinion that Hamby's prints on the hood of Applicant's car showed he was "getting out of the way, as he said he did"; (c) testimony that a grand jury no-billed and internal affairs cleared Butler and Hamby; and (d) testimony that neither Butler nor Hamby had previously fired his weapon in the line of duty.

In order to prevail on these claims, Applicant must show that the trial judge would have erred in overruling objections to the evidence. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). A trial court's decision about admitting evidence is reviewed for an abuse of discretion and will constitute error only if the decision lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

## a. Butler's opinion

Applicant claims that his attorney was deficient for failing to object to Butler's testimony that Applicant knew that he and Hamby were police officers based on the

things in their car, i.e., floor-mounted police radio, "Sam Brown" bearing asp baton and can of mace, and bag of police gear containing handcuffs, holsters, magazines and hand-held radio. The officers had left these items under a jacket on the floor of the backseat before lunch but afterward found them on the front passenger seat.

Applicant cites two cases to support his argument that Butler's opinion was inadmissible. They are *Witty v. State*, 203 S.W.2d 212, 220 (Tex. Crim. App. 1947) (commission op.) (witness's opinion generally inadmissible to interpret meaning of another's acts, conduct or language), and *Frank v. State*, 49 S.W2d 759, 760 (Tex. Crim. App. 1932) (police officer should have testified to what suspect said or did instead of concluding that he faked an injury). Notwithstanding these authorities, a fact witness's opinion testimony is admissible if it is (a) rationally based on his perception and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue. TEX. R. EVID. 701; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002).

Butler's opinion was rationally based on his perceptions about the car's contents, and it was helpful to a determination of Applicant's state of mind, a disputed issue in the case. The trial court would not have erred in overruling an objection to this testimony, and the defense attorney was not deficient for failing to object to it.

b. Villarreal's opinion

Domingo Villarreal, a crime scene officer for the Humble Police Department, testified about identifying Hamby's print on the hood of Applicant's car:

> Officer Hamby put his left hand on that front of that car, with movement, and at that point getting out of the way, as he said he did, to be able to leave me that impression on there and identify that it was his.

Applicant characterizes this testimony as an inadmissible opinion that Hamby was telling the truth. In support of his argument he cites *Schutz v. State*, a case of aggravated sexual assault of a child in which this Court held that expert testimony that "constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations" does not assist the jury, and is inadmissible. 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). Applicant also relies on *In re G.M.P.*, 909 S.W.2d 198, 205-06 (Tex. App. — Houston [14th Dist.] 1995, no writ), and *Black v. State*, 634 S.W.2d 356, 357-58 (Tex. App. — Dallas 1982, no pet.), which held that a witness's belief that the complainant was telling the truth about sexual assault allegations was inadmissible.

Unlike the witnesses in the cases that Applicant cites, Villarreal did not offer a direct opinion about Hamby's truthfulness; he testified about his observations of the physical evidence. His testimony that the prints showed that Hamby got out of the way "as he said he did" was a shorthand rendition of the significance of the physical evidence. The trial court would not have erred in overruling an objection to this testimony, and the attorney's failure to object was not deficient performance.

c. Grand jury and internal affairs actions

Hamby, Butler and Keith Webb, an investigator for the district attorney's office, testified that the two officers were no-billed by a grand jury. Hamby also testified that

they were cleared in an internal affairs investigation.

Applicant claims that the testimony about the no-bills was irrelevant because the same DA's office that presented the cases to the grand jury also prosecuted Applicant, a situation that he deems a conflict of interest. To the extent that there was a conflict of interest, it would not render the evidence irrelevant.

Applicant points out the attorney's habeas hearing testimony that, in hindsight, he thought the evidence was inadmissible. But an attorney's subjective opinion and hindsight evaluation of his trial performance are irrelevant to an appellate review of an IAC claim. *Richter*, 131 S.Ct. at 790. Applicant further argues that this evidence was prejudicial because it likely led the jury to believe that an acquittal depended on finding that the complainants acted unlawfully. But that risk was inherent to a defensive strategy centered on persuading the jury that the shooting was unjustified, and Applicant does not claim that strategy was unreasonable.

While the State argues that the decision not to object to this testimony supported the over-arching defensive theory of collusion and cover-up, Applicant asserts that no competent lawyer would try to persuade a jury that a grand jury was involved in covering up a bad police shooting. We are skeptical of this bare assertion.[1] We agree with the

---

[1] *See, e.g.*, *Missouri police prepare for riots as they await grand jury decision over whether to charge officer Darren Wilson in the shooting death of Michael Brown*, DAILY MAIL (24 Oct. 2014, 9:52 EDT), http://www.dailymail.co.uk/news/article-2806561; Twila Decker, *Violence Returns To St. Pete Streets: Gunfire Wounded Two Police Officers After A Grand Jury Cleared Another Officer In The Killing Of A Black Motorist*, ORLANDO SENTINEL (Nov. 14, 1996), http://articles.orlandosentinel.com/1996-11-14/news/9611140167_1_police-officer-grand-

State that this testimony supported the defensive strategy, and we will not second-guess the attorney's decision not to object to it. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

### d.  Hamby and Butler had never before fired their guns in the line of duty

Applicant argues that this evidence was inadmissible for three reasons.  First he claims it was irrelevant.  But the trial court would not have erred in finding it relevant to show that the complainants were in fear of injury when the car came at them, a fact issue under the indictment.  Applicant next asserts that this testimony was inadmissible bolstering.  Since it had relevance apart from any tendency to suggest the complainants were credible, however, it was not bolstering.  *Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993).  Lastly he points out that if the officers had previously fired their weapons on the job, such testimony would have been inadmissible under Rule of Evidence 608(b).  That rule prohibits the introduction of "extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness."  The fact that Hamby and Butler had never before fired their guns in the line of duty is not extrinsic evidence of specific instances of their conduct that

---

jury-riot; J. David Goodman and Al Baker, *Wave of Protests After Grand Jury Doesn't Indict Officer in Eric Garner Chokehold Case*, N.Y. TIMES (Dec. 3, 2014), http://www.nytimes.com/2014/12/04/nyregion/grand-jury-said-to-bring-no-charges-in-staten-island-chokehold-death-of-eric-garner.html; Allie Gross, *California Becomes First State to Ban Grand Juries in Police Shooting Cases*, MOTHER JONES (Aug. 13, 2015, 10:00AM), https://www.motherjones.com/politics/2015/08/california-becomes-first-state-ban-grand-juries-police-shooting-cases/.

support or attack their character for truthfulness. Thus, Rule 608(b) is inapplicable.

Applicant has not shown that the trial court would have erred in overruling an objection to this testimony, so he has not demonstrated that his attorney acted deficiently in failing to object to it.

## 2. Elicitation of Opinion Testimony

Applicant complains about his attorney's elicitation of testimony from (a) Andrea Szabo that she thought this was a "rightful shooting," (b) detective Victor Gonzales that he "talked to Villarreal, and the evidence he obtained from the hood of the vehicle, it's pretty obvious" that Applicant tried to run over the complainants and (c) Hamby that he had no doubt that Applicant knew that he was a police officer though he was not in uniform.

### a. Szabo

Szabo testified on direct that she and her mother, Billie Stubblefield, were pulling into the parking lot of Asian City when Szabo saw two officers facing a vehicle with their weapons drawn. The car went toward one officer. It seemed to her that the officers were in danger from the car. Szabo put some distance between her own car and "everything" that was going on in the Asian City parking lot, heard gunfire and saw the car go into the bushes. She saw one officer on a cell phone and the other pointing his gun at a man on the ground. The officer with the gun was telling the man not to move, but the man kept getting up, and there was more gunfire.

On cross-examination the defense attorney impeached her with prior inconsistent statements and established that she:

– did not immediately know that the two men with guns were police officers;

– told defense investigator Rudy Vargas that she heard a gunshot before she saw a gunshot;

– did not know the circumstances surrounding the first gunshot;

– did not remember while testifying whether she heard or saw gunfire first;

– did hear a gunshot before she saw a gunshot;

– is friendly with police officers; and

– never saw Applicant on his knees.

The attorney also asked her if she thought it was a rightful shooting, and she answered yes.

The State points out that the attorney asked for Szabo's opinion only after impeaching her and argues that this context suggests that the attorney was executing a trial strategy in asking her opinion about the shooting. But the State does not identify the strategy the attorney was supposedly carrying out at that point, and though the cross-examination damaged Szabo's credibility, her opinion still undermined the defensive theory that the shooting was unjustified. The attorney erred to elicit the opinion, but as detailed below, the ineffective assistance claim still fails for lack of prejudice.

b. Hamby

On direct examination, Hamby testified that Applicant tried to run over "two

police officers." The defense attorney cross-examined him about whether the jacket he was wearing covered his badge. Hamby insisted the badge was visible in spite of the jacket but conceded that a uniformed officer's badge "would stand out a little better[.]" The attorney then asked, "And there's no doubt in your mind that the defendant knew you were a police officer, even though you were wearing that jacket, which was a Marine Corps jacket?" Hamby answered, "No doubt in my mind."

Applicant argues that Hamby's opinion about his state of mind was inadmissible, and he points out that the attorney conceded as much at the habeas hearing. But Hamby's opinion was admissible for the same reasons that Butler's was: It was rationally based on his perception and helpful to determining a fact in issue. TEX. R. EVID. 701. The trial court would not have erred in overruling an objection to it, and the attorney's elicitation of it will not support a claim of ineffective assistance of counsel.

c. Gonzales

The defense called as a witness Victor Gonzales, a Humble Police Department detective, and asked him whether a video camera across the street captured "what happened at the Asian City." Gonzales answered non-responsively,

> The only thing the video contained was when myself and Detective Miller made the approach to the location, and it just captures an overall but it didn't capture any of the shooting or when your client attempted to run over the officers.

Instead of objecting, however, the attorney asked Gonzales how he knew that Applicant tried to run over the officers, and Gonzales answered, "I talked to Detective Villarreal,

and the evidence that he obtained from the hood of the vehicle, it's pretty obvious."

Gonzales's answer was objectionable because he lacked personal knowledge. Assuming

that counsel should have objected, we address prejudice later in this opinion.

**3. Opening the Door to Evidence of Guns in Applicant's Car and Failing to Object to Testimony that the Guns Were Stolen**

The attorney asked Hamby if Applicant had a weapon on him when he was

arrested. Hamby answered, "Not on his person." The attorney then asked, "No weapons,

right?" The prosecution argued that this question opened the door to testimony that there

were guns in Applicant's car. The trial court agreed, reasoning that it left "a false

impression with the jury that this man was completely unarmed[.]" Consequently, Officer

Villarreal testified that he found a loaded Glock hidden behind the glove compartment, a

loaded magazine under the armrest and a loaded nine-millimeter pistol hidden in the car.

He added, without defense objection, that the guns were reported stolen from a car

burglarized five days earlier.

Applicant claims that his attorney had no sound strategic reason to ask Hamby

about Applicant's lack of a weapon on his person because in the absence of such

testimony, "the jury would assume that he was unarmed[.]" But the lack of weapons on

Applicant's person supported the defensive theory that the shooting was unjustified, and

that question did not, in the trial court's judgment, open the door to the evidence about the

guns in the car. The further question, however, "No guns, right?" did. Since the salient

point had already been made about the lack of guns on Applicant's person, the additional

question was unnecessary.

The State argues that the testimony about guns in Applicant's car was admissible to show Applicant's motive: He was a convicted felon who would have been subject to prosecution for felon in possession of a firearm, and this explained his desperate effort to flee the scene of the burglary. We agree that the trial court would not have abused its discretion in admitting the evidence of the guns on that basis. As for the stolen nature of the guns, however, counsel could have objected to the non-responsive testimony. Assuming that his failure to do so was deficient performance, we address prejudice later in this opinion.

## 4. Failure to Object to Argument Outside the Record

The prosecutor argued in closing that Applicant's car could not have gotten over the curb while idling:

> It's just not going to happen. I also drive a four cylinder car and I'm telling you, not going to happen. Your common sense tells you that engine was revved and that's how it had enough momentum to end up in those bushes.

Trial counsel testified at the habeas hearing that he did not think it was necessary to object to this argument because he had presented the car's black box evidence which did not show any acceleration or impact. His failure to object to this innocuous outside-the-record remark was not deficient performance.

## Prejudice Evaluation

The trial attorney arguably performed deficiently in three ways: eliciting Szabo's

opinion that this was a rightful shooting, eliciting Gonzales' testimony that it was obvious from what Villarreal said that Applicant had tried to run over the complainants, and failing to object to testimony that the guns in the car were stolen. Assessing these errors in light of the entire record, we cannot say that there is a reasonable probability that in their absence, the jury would have acquitted Applicant.

Szabo suffered a harsh cross examination; her opinion about the rightfulness of the shooting likely carried little weight with the jury. Gonzales' testimony based on what Villarreal said added nothing new to the evidence; the jury heard from Villarreal directly. As for the testimony that the guns in Applicant's car were reported stolen, it did not introduce an unsavory aspect to the case that was not already apparent from other, unobjectionable evidence.[2]

The attorney made mistakes, but error-free counsel is not required. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013). Furthermore, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 131 S.Ct. at 791. The attorney's overall performance in this case demonstrated such advocacy in the presentation of evidence[3] and his closing

---

[2] Before he burglarized the officers' car, Applicant burglarized another car in the same parking lot. The owner of that car found its window smashed open and her briefcase in the car that "was stopped in front of the restaurant halfway in some bushes, like it had ran up the curb[.]" Applicant's car also contained an assortment of tools, each of which had a broken or bent tip "which is consistent with it being used as a tool to pry an item[.]"

[3] The defense attorney developed the following evidence: eyewitness Yong Mavis' 911 call asking why they shot Applicant; Szabo's bias and inconsistencies; Stubblefield's failure to see Applicant's car move; the failure of Hamby's 911 call to capture the complainants' demands

argument.[4]

## CONCLUSION

Viewing the totality of the record, we cannot say that counsel's errors were so serious that he was not functioning as the counsel guaranteed by the Constitution or that there is a reasonable probability that Applicant would have been acquitted in their absence. *Strickland*, 466 U.S. at 687. Applicant fails to meet both prongs of *Strickland*.[5] Relief is denied.

Delivered: June 20, 2018

Do Not Publish

---

that Applicant get on the ground; the DA investigator's opinions that the shooter was standing in front of the vehicle instead of lying on its hood when he fired; Butler's ability to walk on-scene in spite of his claim that he had just been hit by a car; the on-scene statement by an unidentified officer that "he" shot Applicant's "ass while he was laying on the ground."

[4] The attorney emphasized his theory of the case, "Corruption, conspiracy, cover-up, it's like an equation. That equals reasonable doubt." Based on the scene video he argued that the hand print on the hood of the car was placed there after the fact, Butler was not actually injured because he was "walking around with no limp," and the police were "out there trying to figure out what they going to say about this guy shooting this guy while he was laying face down on the concrete." He reminded the jury of the bullet trajectories and suggested "that Butler walked up to that car and started shooting. [Applicant] wasn't getting out of there alive."

[5] Applicant's brief offers editorial comment about the trial attorney and speculates about why the habeas judge signed the findings she did. This commentary and speculation shed no light on the validity of his IAC claims. Consequently, we do not consider them.