BEN BORDEN v. THE STATE.

No. 2094. Decided April 17, 1901.

1. Change of Venue—Practice.

Where the judge of his own motion changed the venue, and his right to do so was controverted by defendant, and there was no order in the record save defendant's controverting motion, Held, there should have been the order embracing the reasons upon which the court predicated his authority to change the venue, but in the face of the controverting motion and bill of exceptions it will be presumed there was such an order, and that there was no abuse of discretion in the court's changing the venue.

2. Cross-Examination of Witness.

Where a defendant on direct examination of a witness has adduced testimony which would have been inadmissible had it been elicited in the first instance by the State, he can not be heard to complain that the State on cross-examination of the witness had the witness to repeat what he had stated on his direct examination.

3. Assault to Murder—Hearsay Opinion Evidence.

On a trial for assault to murder, it was not error to refuse to permit a witness to testify that on the morning of the assault he had stated to his son that, in his opinion, a sister of defendant was insane from grief at the killing of another brother by the alleged assaulted party a short time theretofore and that they were bringing her to town to try her for lunacy. Such testimony was clearly hearsay and was no part of the alleged assault so as to make it admissible as res gestae.

4. Same—Provocation—Charge.

On a trial for assault to murder, where the court instructed the jury that the provocation must arise at the time of the alleged assault, but they were further instructed that they could look to all the evidence in the case in order to determine the adequacy of the provocation—this was in accord with the decided cases.

5. Same—Presumption from Use of Deadly Weapon—Charge.

On a trial for assault to murder, a charge is erroneous which, in effect, instructs the jury that if in the assault the defendant used a deadly weapon, they would presume against him that he intended to kill the assaulted party. Such is not the rule. The presumption from the use of a deadly weapon is to be indulged in favor of and not against defendant, that is, the rule is if the assaulted party used a deadly weapon, the presumption is he intended to take defendant's life; and in such case defendant would have the right to shoot him. The presumption is intended for the protection of defendant and should never be turned against him.

**6. Charge—Limiting Impeaching Testimony.**

On a trial for assault to murder, where testimony has been adduced impeaching a number of witnesses, and the court, in its charge, failed to limit the application of the testimony to two State's witnesses, whose impeaching testimony made the case against defendant stronger than that of his own winesses; Held, error, these witnesses should also have been embraced in the charge.

**7. Assault to Murder—Self-Defense—Charge.**

On a trial for assault to murder, where it appeared that there was a grudge between the parties and each was apprehending that the other would attack him; and the evidence was conflicting as to which of them made the first hostile demonstration when they met, Held, the jury should have been distinctly told, in effect, that if the assaulted party made the first hostile demonstration, causing defendant to believe that he was in danger thereby of life or serious bodily injury, he, defendant, had the right to shoot said party. And, moreover, that if he, defendant, had reason to believe that when he met the assaulted party, the latter would attack him, he, defendant, had the right to prepare himself against such attack and go thus about his lawful business; and, that if, while so doing, he met his antagonist, and reasonably apprehending that the latter was about to attack him, he merely prepared himself against such attack and fired the first shot after his antagonist had done some act which caused him to believe an assault was about to be made upon him with a deadly weapon, he would be justifiable in doing so.

**8. Same—Charge.**

On a trial for assault to murder, it should all the time be borne in mind that it is the defendant who is being tried and the issues should be presented by the charge from his standpoint.

APPEAL from the District Court of Cherokee, on change of venue from Angelina. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder Fred Scroggins, on the 14th day of November, 1900.

The record shows that prior to the rencounter which occasioned this prosecution, there had been most serious trouble and difficulties between the Borden and Scroggins families. In one of their previous difficulties Robert Scroggins, a brother of Fred Scroggins, had been killed by Ben Borden, this appellant. Subsequently, in another difficulty, Fred Scroggins had killed Joe Borden, a brother of appellant. Fred Scroggins was indicted for the murder of Joe Borden and his case had been set for trial at Lufkin, for the 15th day of November, 1900. In the meantime serious threats had been made against each other by the survivors. They carried arms, and it was generally expected that when they met a fatal rencounter would ensue. On the day before Fred Scroggins' case was set for trial, to wit, on the 14th of November, the parties were preparing for the trial, Borden going out in a wagon with his friends to hunt up the witnesses for the prosecution and Scroggins going to Lufkin in a wagon to consult with his lawyers. The two wagons met in the road, and shooting immediately occurred, in which this defendant was shot in the hand and also in the back of the neck. It does not appear that Scroggins was wounded in this shooting. There is a direct conflict in the testimony as to who began this difficulty or made the first hostile demonstrations. Both parties were indicted for assault with intent to murder. The case against Scroggins had already been

tried and he had been convicted of assault with intent to murder this appellant. The court, of his own motion, changed the venue of the case from Angelina to Cherokee County.

No further statement necessary.

No brief for either party has come to the hands of the Reporter.

*Rob't A. John*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

Appellant made a motion traversing the change of venue. It appears from the record that the homicide occurred in Angelina County, and that the venue was changed to Cherokee County. Appellant, by a motion, which is presented in bill of exceptions number 1, controverted the authority of the judge on his own motion to change the venue and transfer the case from the District Court of Angelina County to the District Court of Cherokee County. He alleged, in substance, there was no prejudice in Angelina County for or against appellant, or for or against the State, which would militate against a fair and impartial trial; that there was no dangerous combination of influential persons in said Angelina County which would suggest that a trial alike fair and impartial to the State and defendant could not be had; and he offered to produce evidence to sustain his allegations, which was refused by the court. We would say, with reference to this matter, that the record does not apprise us of the grounds upon which the court ordered the change of venue. There is no order in the transcript—only appellant's controverting motion. There should have been the order, embracing the reasons upon which the court predicated his authority to change the venue. White's Ann. Code Crim. Prom., art. 613, and authorities there cited. In the face of the motion controverting the order of change of venue, it will be presumed there was such order, but in the shape in which the bill of exceptions is here presented we are unable to say there was any abuse of the discretion of the court in making the change of venue.

On the trial appellant introduced as a witness B. F. Fancher, and proved by him that he had met defendant Borden as defendant was going to Homer on the 13th of November last, and warned him not to go, as he (witness) believed defendant's life would be in danger should he go to Homer; and that witness told defendant that he had seen Fred Scroggins and his father, old man Scroggins, in Homer on the previous Saturday with their guns; that the old man had a shotgun and Fred had a Winchester rifle; and that he would not be safe in going to Homer; that they were looking out for him; that it was the general belief that they were looking out for him, and when they met there would be a shooting scrape. Whereupon, on cross-examination, counsel for State asked witness if as a fact it was the general belief about

Homer that when defendant and Fred Scroggins met there would be trouble, and that one or both of them would be killed, which question was objected to by defendant at the time it was offered, upon the following grounds, to wit: "(1) because the same was hearsay; (2) because the answer sought was opinion evidence, being the opinion of the people about Homer." If this testimony had not been adduced in the first instance by the defendant, as is shown by this bill, his objections urged would be unquestionably regarded as well taken, but having introduced this testimony, he can not complain that the State in. cross-examination of the witness merely had the witness to repeat what he had stated on his direct examination; and in that connection to also state the further fact that when said parties met it was the general belief that one or both of them would be killed—defendant having already proven by the witness that it was the general belief when they met there would be a shooting scrape between them. This was essentially all that was brought out of said witness on cross-examination, and it had previously been adduced on the direct examination by appellant himself. Of course, if the parties were to have a shooting scrape when they met, this would involve the idea that one or both would be killed.

It does not occur to us that the court erred in refusing to permit the witness Dr. Abney to testify that it was his opinion and belief from the conduct of Mrs. Della Smith (sister of appellant) when she came into Lufkin on the morning of the homicide, a short time thereafter, that she was insane from grief on account of the death of her brother Joe Borden, who had been killed by Fred Scroggins shortly before; and that he remarked to his son at the time that "Della Smith has gone crazy from grief on account of the death of her brother Joe, and they are bringing her to town to try her for lunacy." Such testimony was clearly hearsay, and was no part of the alleged assault so as to make it res gestae. If her condition at that time would account for her statement then made, such condition was provable as any other fact. But the belief of a witness as to her condition, and what he said about it, would not be evidence.

The charge of the court defining murder and malice aforethought is in line with the approved authorities on this subject. We also believe the charge of the court on aggravated assault was sufficient. True, the jury were instructed that the provocation must arise at the time of the alleged assault, but they were further instructed that they could look to all the evidence in the case, in order to determine the adequacy of the provocation. This is in accord with the decided cases.

We are inclined to believe that the objection urged by appellant in his seventh bill of exceptions to the charge of the court is hypercritical. We do not understand the court to convey the idea that the mere shooting or attempting to shoot at Scroggins by appellant with the gun with intent to kill him would constitute an assault with intent to murder.

The charge requires the jury to believe that such assault was made with malice aforethought.

Appellant's objection to the fourth subdivision of the court's charge on self-defense appears to be well taken. In this charge, the court correctly told the jury that, when the assault takes place, to prevent murder, if the weapon or means used by the party attempting such murder are such as would be calculated to produce that result, it is to be presumed that the person using or attempting to use them designed to inflict the injury. But the vice is in applying this proposition to the defendant. That is, the jury were in effect told that, if defendant in the assault used a deadly weapon, they would presume against him that he intended to kill the assaulted party. The presumption, as we understand it, is not to be used against appellant as to his act but in his favor; and the jury should have been told that, if the assaulted party himself used a deadly weapon, they would presume he intended to take the life of appellant; and that in such case appellant had a right to shoot him. Instead of this, however, the presumption in the charge of the court was wielded against appellant, and the jury were authorized to indulge the presumption against him, on account of the use of the weapon, that he intended to kill Scroggins; and that in such case, after indulging the presumption, he would only be authorized to shoot his adversary in case they believed his life was in danger. The presumption, as we understand it, was intended for the protection of appellant and his rights, and should never be turned against him. Agatone v. State, 41 Texas, 501; Walker v. State, 7 Texas Crim. App., 627.

Appellant complains that the court failed to limit the testimony of Calvin Moontooth and Alfred Chesnutt to the impeachment of the State's witnesses Elliott and Ramsey. Inasmuch as the court did limit impeaching testimony as to all other impeached witnesses except these two, he should also have limited the purpose of the testimony as to these. True, they were State's witnesses, but their impeaching testimony made the case stronger against appellant than that of his own witnesses; and the jury may have regarded such evidence as original evidence, especially being introduced by defendant as to what said State's witnesses said about the shooting shortly thereafter.

We do not think there were any such threats in this case as required the court to give a charge on the doctrine of threats. We do not believe, however, the charge of the court on self-defense properly applied the rules of law to the facts of this case; and consequently that the contention of appellant that same is too abstract is a sound proposition. Besides containing the vice as above suggested as to the presumption against appellant from the use of a deadly weapon, the jury's attention was not challenged to the prominent issuable fact in the case, that is, who made the first assault. The case throughout was conducted by the State and defendant with this issue in view. The evidence unquestionably shows a grudge existing between the parties, and that both

of them were in a state of expectancy, no doubt each of them apprehending that the other would attack him. When they met in the road, the testimony for the State shows that appellant made the first hostile demonstration, while the testimony for the defendant shows that Scroggins made the first hostile demonstration. In such a state of case, the jury should have been distinctly told that, if Scroggins made the first hostile demonstration or did some act which reasonably caused defendant to believe that his life was in danger or that he was in danger of serious bodily injury from an attack then being made or apparently being made, or about being made, or apparently about being made, on him by Scroggins, that he had a right to shoot Scroggins. And moreover, in our opinion, they should have been instructed that, if appellant had reason to believe that when he should meet with Scroggins the latter would attack him, he had a right to prepare himself against such attack and go about his lawful business; and that while so engaged he met Scroggins, and then reasonably apprehending that the latter would attack him, he merely prepared to defend himself against such attack, and this was all he did; but that Scroggins did some act, which caused him to believe that the latter was about to assault him with a deadly weapon, then he had a right to defend himself, and although the jury might believe, under such circumstances, that appellant fired the first shot, he would be justifiable in so doing. Without attempting to formulate specifically in words the charge that should have been given, we have attempted to outline the principle which should have controlled the judge in the instructions given to the jury upon the issuable facts of the case; and it should be borne in mind all the time that it is the defendant who is being tried and the issues should be presented from his standpoint.

It is not necessary to discuss other questions, as they are not likely to occur on another trial; but for the errors pointed out, the judgment is reversed and the cause remanded.

　　　　　　　　　　　　　　　　*Reversed and remanded.*

Brooks, Judge, absent.

[Note.—The State's motion for rehearing was overruled without a written opinion.—Reporter.]