## Barto Nix v. The State.

### No. 2841. Decided January 20, 1904.

**1.—Charge of the Court—Reasonable Apprehension of Danger.**

It is error in a case of manslaughter to charge the jury that if they believed from the acts, if any, of the deceased, or from his words, if any, coupled with his acts, there was created in the mind of the defendant a reasonable apprehension that he, the defendant, was in danger of death or serious bodily injury at the hands of the deceased, said charge reciting certain expressions and acts alleged to have been made or done by the deceased; as it required the jury to believe that deceased used such expressions and to couple them with acts of the deceased before they could acquit.

**2.—Same—Self-Defense.**

See facts stated in the opinion under which the appellant was entitled to a clear charge affirmatively setting forth his theory of the difficulty, without coupling the expressions and the acts of the deceased together and making appellant's right of self-defense depend upon the conjunction of both.

**3.—Same—Offensive and Defensive Act.**

A charge which instructs the jury that the law of self-defense applies to a defensive and not an offensive act has a tendency to impress the jury with the fact that the court did not believe the defensive theory, and that the defendant brought about the difficulty or produced the occasion.

**4.—Same—Hostile Intention—Self-Defense—Carrying Pistol.**
   A person may carry a pistol for the purpose of defending himself against an anticipated attack, and with the further intention, if the attack comes upon him in such shape that it becomes necessary to use the pistol in a deadly manner, to so use it without being guilty of a criminal hostile intention, and a charge of the court which qualifies this right is erroneous.

   Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

   Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

   The facts of the case applicable to the issue presented, sufficiently appear in the opinion of the court.

   *Bennett & Jones,* for appellant.

   *Howard Martin,* Assistant Attorney-General, for the State.

   DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter, and given the minimum penalty. To the following portion of the charge an exception was reserved: "If you believe from the evidence that just prior to the killing deceased stepped back, and as he did so, put his right hand to his pocket and said to the defendant, 'You will not move another bale of hay,' or said, 'You damned son of a bitch you will not move another bale of hay,' and if you believe from the acts, if any, of the deceased, or from his words, if any, coupled with his acts, there was created in the mind of the defendant a reasonable apprehension that he, the defendant, was in danger of death or serious bodily injury at the hands of the deceased," etc., you will acquit. We believe this charge, under the facts of the case, was error, because it required the jury to believe, before they could acquit, from the facts that deceased used the expression set out in the charge, and that they were required further to couple these words with the acts of the defendant before he could justify. The testimony was contradictory upon this point. The State's only eyewitness was a boy named Hill. Bearing upon this immediate portion of the difficulty, or the facts adduced, this witness stated he went with defendant to the scene of the homicide, which was a house or barn in which hay belonging to both deceased and appellant was stored, deceased being a renter of appellant; that appellant was using some scales for the purpose of weighing hay he was selling from this house, and had placed the scales on the inside of the barn or house; that deceased picked them up and moved on the outside, and appellant said to him: "Just leave them alone." Deceased went on and set them out as if he did not hear. This witness further stated that appellant remarked to deceased, "Do you want any of it?" and deceased said, "Do you want any?" Appellant said, "You get out of here." Deceased replied, "I don't have to; this is my barn." Appellant shot deceased with a pistol. When appellant made the remark, "Do you want any

of it?" he pulled his pistol and held it out in front of him. This witness further says that he was not looking at deceased at the time of the shooting, but was closely observing appellant and did not see any move on the part of deceased to draw his pistol. The evidence for the defense along this line was that appellant told deceased not to set the scales out of the house; that he had seen a lawyer in regard to their troubles, and deceased said that the lawyer could not settle his part of it. Appellant made a remark, which was not heard by witness Jim Nix, but at this juncture deceased threw his hand to his right front pocket, and said, "You damned son of a bitch I am here to see that you never move another bale of hay." Appellant immediately drew his pistol and shot. This witness was watching both parties. Appellant testified in his own behalf that deceased went into the barn, picked up the scales and set them out just north of the chimney. Up to this time nothing had been said between the parties, except good morning. As deceased set the scales out appellant told him not to do that, that it was his (appellant's) hay, and he was going to get it. Deceased said, "Show your papers." Appellant replied "The wagons will be my papers when they come." Deceased stepped back, threw his hand to his pocket, and said, "I am here to see that you never move another bale of hay." As he made this remark appellant fired. There was only one shot. It is made further to appear that when the body of deceased was examined, the pistol was partly out of the pocket to which deceased and his witness show he threw his hand. Appellant was entitled to a clear charge affirmatively setting forth his theory of this transaction without coupling these matters together, or limiting his right of self-defense by making a conjunction of the two necessary for the jury to acquit. Evidence of the State excludes the statements proved by defendant and his witnesses. Therefore the jury may not have believed this theory of the defendant's case and the court had made it necessary by the charge for them to believe these remarks were made by deceased in order to return a favorable verdict.

The court charged the jury in these words: "But the law of self-defense applies to a defensive and not an offensive act, and is limited to necessity or apparent necessity as above explained. Therefore, if you believe from the evidence that at the time the defendant fired the shot he did not have reasonable ground for believing and that it did not reasonably appear to defendant, viewing the circumstances from his standpoint," etc., you will acquit. Upon another trial we believe that this limitation on self-defense should not be given. It has a tendency to impress the jury with the fact that the court did not believe the defensive theory; that is, that defendant brought about the difficulty or produced the occasion. The evidence pro and con as already stated places the immediate facts of the killing on rather close lines; and if the testimony for the State was true, or believed by the jury, this charge was calculated to impress the jury that the court did not believe the defensive theory

of it and may have turned the scales in the minds of the jury adversely to appellant.

Appellant requested the following instruction: "That the defendant had a right to carry the pistol with him to get and remove his hay from the deceased's barn if defendant believed or had reason to believe that he might have trouble, or if he believed or had reason to believe that deceased would do him serious bodily harm or take his life." This charge was given with the following qualification: "And if you believe in addition to the foregoing that defendant carried the pistol without any hostile intentions but for the purpose of defending himself." We do not believe this qualification should have been inserted. The court had already charged the jury that appellant had the right to carry the pistol to the barn, and appellant had testified that he carried it with him to defend himself in case deceased attacked him. This he had the lawful right to do, and clearly the jury understood from the defendant's testimony that he carried the pistol for the purpose of defending himself against an attack of deceased; and they may have further believed, and doubtless did, that this manifested hostile intentions, and in one sense of the word perhaps it did; but still he had the right to carry it to protect himself, and even to shoot, if necessary, to defend his life or his body from serious injury. The carrying of the pistol for the purpose of defending himself from an anticipated attack, for which he seemed to have decided reasons to draw the inference, would in one sense carry with it the idea of hostile intention; but as understood by appellant, if his testimony is believed, it was not offensive but defensive. A man may carry a pistol for the purpose of defending himself against an anticipated attack, and with the further intention, if the attack came upon him in such shape that it was necessary to use the pistol in a deadly manner, to so use it without being guilty of a criminal hostile intention.

There are other questions of more or less importance, growing out of the speeches and argument of the prosecution and the conduct of the jury upon their retirement. These will be avoided upon another trial, and are therefore not discussed. For the errors mentioned, the judgment is reversed and the cause remanded.

*Reversed and remanded.*