Rene MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

and

Rudy MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–82–00068–CR, 04–82–00078–CR.

Court of Appeals of Texas,
San Antonio.

May 25, 1983.

Allen Cazier, San Antonio, for appellant.

Bill White, Dist. Atty., Susan Reed, Hipolite Canales, Jr., Robert C. Arellano, James L. Bruner, Asst. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

OPINION

CANTU, Justice.

Rene and Rudy Martinez, brothers, were separately indicted for the offense of murder. Following a joint trial, a jury found them guilty of the offense as alleged in the indictments. The jury assessed Rene Martinez' (our Cause No. 04–82–00068–CR) punishment at thirty-five (35) years' confinement in the Texas Department of Corrections. Pursuant to his election on punishment, the trial court assessed Rudy Martinez' (our Cause No. 04–82–00078–CR) punishment at sixty-five (65) years' confinement in the Texas Department of Corrections. The trial court appointed different attorneys to represent the brothers on appeal and each appellant brings his separate appeal. Since the appellants were tried together and the convictions arise out of the same transaction, the facts in each case are identical. We therefore will consider both cases together.

Rudy raises three grounds of error and Rene six. Rene's first two grounds of error raise sufficiency questions and will be dealt with initially. We will, therefore, review all the evidence in the light most favorable to the verdict. *Drager v. State,* 548 S.W.2d 890 (Tex.Cr.App.1976); *Esquivel v. State,* 506 S.W.2d 613 (Tex.Cr.App.1974).

Randy West, a neighbor of the appellants, testified that on April 6, 1980, the day before the murder, he saw two unfamiliar subjects, a male and female, break into appellants' house when they were away for the weekend. After the man and woman finished loading appellants' household goods (a stereo, video-cassette player, etc.) into their car, the couple drove off. West followed the couple to 103 Grantham Street in San Antonio, where he saw them unload appellants' property and take it into the house. The house at 103 Grantham Street was the home of the deceased.

On the day of the murder, West told the appellants who had returned to find their house ransacked, what had occurred. He offered to take the Martinez brothers to the address on Grantham Street where he had seen the burglars take their property.[1] Upon learning where their property had been secreted, the appellants decided to make a foray to 103 Grantham and retrieve their possessions. West further testified that he led appellants to 103 Grantham Street. West rode in a wrecker with Mike Leadford, a witness for the State, and a friend of appellants. When they arrived at 103 Grantham, Leadford and West pulled the wrecker over to the curb in front of the house and watched as the appellants approached, backed their pickup truck into the driveway, and entered the deceased's house.

Both Leadford and West testified that Rene carried a shotgun when he approached the house. Leadford also testified he believed Rudy had what looked like an automatic weapon in his belt. Rudy testified that he was unarmed when he entered the house and the defense introduced Rudy's wallet into evidence to explain why Leadford might have believed he had a gun in his belt.

Leadford testified that Rudy and Rene approached the front door and after waiting about thirty seconds entered the deceased's residence. Both West and Leadford heard one gunshot some thirty seconds after the brothers entered the house. After Rene walked out of the house carrying a video-tape recorder box, Leadford heard two more gunshots in rapid succession. The first and second shots were about four or five minutes apart according to West. West, in contrast to Leadford, stated that Rene was inside the house at the time the second and third shots were heard, but walked out shortly thereafter looking somewhat shaken.

When Leadford and West saw Rene exit the house, the two of them left the scene in the wrecker and returned to the appellants' house where they were rejoined by appellants about five to ten minutes later. Ap-

1. West died prior to trial and his examining trial testimony was introduced in the trial on the merits.

pellants, according to Leadford, had with them some of the property that had previously been taken from their house. Rudy showed Leadford a weapon that had been recovered from the deceased's residence. Leadford saw the appellants make two trips from their pickup truck unloading goods taken from the deceased's house. West testified that he helped appellants unload the pick-up on their return home and that Rudy told him they were still missing a few guns that were taken from their home.

Rene Martinez did not testify. Rudy was the only witness to testify about what happened inside the house. He testified that when he and Rene learned that their property had been taken to the house on Grantham Street, they both went and purchased a shotgun in order to make an effort to retrieve their property. Appellants felt obliged to arm themselves, Rudy testified, because several handguns and a rifle had been among the property taken from their house. With Rene carrying the newly purchased shotgun, and, as Rudy testified, he unarmed, the two approached the door of the deceased's house.

Rudy testified that he knocked and the deceased opened the door. The deceased then backed away from the door and sat on the edge of the couch in the living room. Rudy began yelling at the deceased inquiring as to the whereabout of his property. The deceased denied having the goods. Rene meanwhile located the stolen stereo in another room. Rudy then saw that deceased had a handgun and leaped across the room and grabbed the deceased's arm causing one shot to be discharged into the floor. The pistol was knocked away and a struggle ensued. The struggle culminated when Rudy shot the deceased twice (with the deceased's own gun) in the back of the head because he thought the deceased was reaching for another weapon. Rudy did not know where Rene was during the struggle. Rudy then wrapped the gun in a towel and joined Rene who was already waiting in the pickup truck. Rudy subsequently threw the murder weapon in the Guadalupe River.

The State's ballistic and forensic experts testified that the evidence at the scene was consistent with Rudy's version of the events except that bloodstains on the wall and floor placed the exact locations of the shooting and the position of the body in different locations than Rudy's testimony.

Rene urges this court to reverse his conviction because there is no evidence or insufficient evidence to show that he knew of Rudy's intent to kill or that he was criminally culpable under the law of parties. *See* Tex.Code Crim.Proc. art. 7.02 (Vernon 1974).

In order to determine criminal responsibility under article 7.02, we may look at several factors, some of which were elucidated in *Wygal v. State,* 555 S.W.2d 465, 468 (Tex.Cr.App.1977):

In determining whether an individual is a party to an offense and bears criminal responsibility therefor, the court may look to events before, during and after the commission of the offense. *Ex parte Prior,* 540 S.W.2d 723, 727 (Tex.Cr.App.1976); *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975); *Bush v. State,* 506 S.W.2d 603 (Tex.Cr.App.1974).

'An agreement of parties to act together in a common design can seldom be proved by words, but reliance can often be had on the actions of the parties showing an understanding and a common design to do a certain act....' 16 Tex. Jur.2d, § 58, p. 171.

Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to the offense. *Ex parte Prior, supra; Westfall v. State,* 375 S.W.2d 911 (Tex.Cr.App. 1964).

We believe that there is evidence which, when viewed in the light most favorable to the verdict, supports the conviction of Rene Martinez as a party to the offense. There obviously was some kind of an agreement to act together as the brothers armed themselves to go to the scene of the eventual murder. The contention that they armed themselves in furtherance of an agreement

only to get their property back could or could not be believed by the jury. Certainly the shotgun which Rene carried might lead reasonable people to believe that he intended to use deadly force to regain their possessions.

■ Rene's demeanor after the act could also be considered by the jury as evidence of a prior agreement to aid in the murder. *Barron v. State,* 566 S.W.2d 929 (Tex.Cr. App.1978). Here, both appellants apparently proceeded to load their property into the truck after the deceased was shot. Although Leadford and Rudy testified that when the second series of shots were heard Rene had only taken one trip to the car carrying either the stereo speakers or the video player, yet when they arrived back at their residence testimony indicated that they had to make two trips to the house to unload the truck. The jury could also have considered the appellants' subsequent disposal of the murder weapon to infer that Rene Martinez with the intent to promote the commission of the offense encouraged and aided Rudy Martinez to commit the offense. Considering Rene's armed presence on the scene, along with the other facts of the case, *see Ashabranner v. State,* 557 S.W.2d 774 (Tex.Cr.App.1977), we find there is evidence that would allow a jury to find Rene guilty as a party to the offense and that the evidence is sufficient to support a conviction.

In his third ground of error Rene complains that the charge permits a conviction upon a theory not alleged in the indictment because the indictment did not allege that Rene acted as a party to the offense. This same contention was rejected in *Seals v. State,* 634 S.W.2d 899 (Tex.App.—San Antonio 1982, no pet.), on the basis of *Pitts v. State,* 569 S.W.2d 898 (Tex.Cr.App.1978). Rene's second ground of error is overruled.

■ Rene contends in his ground of error number six that the court erred in not submitting his requested charge on independent impulse. The requested charge reads:

If you believe from the evidence that Rudy Martinez killed Gerald Johnston

upon an independent impulse and not in pursuance of an agreement between the two to kill Gerald Johnston, or if you have a reasonable doubt thereof, then you will acquit the defendant Rene Martinez and by your verdict say not guilty.

The charge actually submitted reads,

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Rene Martinez, together with Rudy Martinez as a party, in Bexar County, Texas, on or about the 7th day of April, A.D., 1980, did with intent to promote or assist Rudy Martinez in the commission of the offense, intentionally or knowingly cause the death of an individual, to-wit: Gerald Johnston, by shooting Gerald Johnston with a gun, by soliciting, encouraging, directing, aiding or attempting to aid Rudy Martinez to commit such offense, you will find the defendant, Rene Martinez guilty of murder.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant, Rene Martinez not guilty of murder and next consider whether the defendant, Rene Martinez is guilty of voluntary manslaughter.

The effect of the two paragraphs taken together are at least as beneficial to Rene as the requested charge. *Simmons v. State,* 594 S.W.2d 760 (Tex.Cr.App.1980), *death penalty vacated on other grounds,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988, *on remand,* 623 S.W.2d 416; *LeDuc v. State,* 593 S.W.2d 678 (Tex.Cr.App.1979).

■ By his fifth ground of error Rene alleges that the court erred in not submitting a circumstantial evidence charge. This is no longer error. *Hankins v. State,* 646 S.W.2d 191 (Tex.Crim.App.1983).

■ In his second ground of error, Rudy alleges that the trial court erred in charging, over objection, on provoking the difficulty because the charge is not supported by the evidence. The State correctly points out that the objection to the charge lodged below was "the defendant objects to such instruction as amounting to a comment on the weight of the evidence." The ground of

error raised in the brief does not comport with the objection raised below. No error is preserved. *Debolt v. State,* 604 S.W.2d 164 (Tex.Cr.App.1980); *Daniels v. State,* 600 S.W.2d 813 (Tex.Cr.App.1980). Although we find error was not preserved for review, a discussion of the charge as it relates to other error properly preserved for review follows infra.

■ By his third ground of error Rudy contends that the court committed fundamental error in not submitting separate jury charges. Fundamental error in the jury charge must be calculated to injure the rights and prevent the appellant from receiving a fair and impartial trial. *See* Tex. Code Crim.Proc.Ann. art. 36.15 (Vernon 1981); *Doyle v. State,* 631 S.W.2d 732 (Tex. Cr.App.1982). *See also Garrett v. State,* 624 S.W.2d 953 (Tex.Cr.App.1983). When such a ground is raised, we must review the charge as a whole. *White v. State,* 610 S.W.2d 504 (Tex.Cr.App.1981).

In reviewing the charge as a whole the following facts come to light.

The majority of the paragraphs are explanatory of the law. The more important ones address self-defense (both Rudy and Rene), define verbal provocation, abandoning the encounter, etc. In the application of the law to the facts the jury is charged that if they find that Rene acted as a party with Rudy in intentionally and knowingly causing Gerald Johnson's death, Rene would be guilty of murder. The same form charge is given for voluntary and involuntary manslaughter.

Separate paragraphs are then given applying the law to the facts in Rudy's case.

■ We cannot see how the application of the law to the facts would be submitted differently if separate charges were given in this case. In any case, we cannot say that the form of the charge was calculated to injure the rights of the appellant.

As to Rudy's argument that the form of the charge on Rene commented on the weight of the evidence and that the court should not have given a self-defense charge, Tex.Code Crim.Proc.Ann. art. 36.15 (Vernon

1981), precludes our review thereof absent objection. *Manry v. State,* 621 S.W.2d 619 (Tex.Cr.App.1981).

Rudy's first ground of error and Rene's fourth ground of error assert that the trial court erred in the denial of a specially requested charge on the right to carry arms to the scene of the difficulty.

The trial court instructed the jury on self-defense under Tex.Penal Code § 9.31 (Vernon 1974) as it applied to both appellants. It then followed the self-defense instructions with the following instruction as to each appellant:

You are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant, Rudy Martinez [Rene Martinez], sought the meeting with deceased for the purpose of slaying deceased, and having found him did some act, or used some language, or did both with intent to produce the occasion and bring on the difficulty, and that the words and conduct of defendant, if any, under the circumstances, were reasonably calculated to provoke a difficulty, and did, and that on such account the deceased attacked him, and he then killed deceased in pursuance of his original design, if any there was, then the defendant cannot justify the killing on the ground of self-defense, but such killing would be murder, or voluntary manslaughter or involuntary manslaughter; but if you believe from the evidence that defendant had no such purpose in seeking the fatal meeting, or having it, did no act reasonably calculated to provoke the difficulty, was attacked, or there was an attempted attack, by the deceased with deadly force, and shot deceased, or if you have a reasonable doubt thereof, then defendant's right of self-defense would not be forfeited, and he could defend himself in accordance with the rules heretofore set forth in connection with the law of self-defense.

The instruction is taken verbatim from *McClung, Jury Charges for Texas Criminal Practice,* p. 275 (rev. ed. 1979), as adapted from *Cain v. State,* 154 Tex.Cr.R. 284, 226

S.W.2d 640 (1950); *cf.* charge in *Norwood v. State,* 135 Tex.Cr.R. 406, 120 S.W.2d 806 (1938).

Both appellants timely objected to the failure of the court's charge to include an instruction on the right to bring arms to the scene of the difficulty. A requested instruction was denied as to each appellant. The proposed instruction was as follows:

> You are further instructed that the right of self-defense is not abridged by the fact that one carries arms to the scene of the difficulty and if you find that the defendants Rene Martinez and Rudy Martinez, or either of them, armed themselves, if they did, when they went to the house of Gerald Johnston, *without intending to provoke a difficulty,* but merely to inquire about or recover their property, and knowing or having a reasonable belief that Gerald Johnston was armed, the defendant's right of self-defense was not abridged and they had the right of self-defense under the above instructions.

The State's reply in each case consists of attempts to distinguish cases relied upon by appellants. Essentially the State argues that appellants did not know the deceased prior to the shooting and had no reason to fear him; that there was no longstanding quarrel, no communicated threats, no indication or knowledge that the deceased was a violent or dangerous person, nor any knowledge that deceased would be home.

The State further argues that appellants did not go to seek an explanation of any *prior difficulty* and that there is *no showing* that appellants ever had any prior contact with the deceased. The record does not totally support the State's position.

■ When told by West that their house had been burglarized by particularly described persons, appellants immediately recognized the descriptions. It was Rudy's position that the house to which West was directing them contained various weapons belonging to them and taken during the burglary. A shotgun was purchased and taken to the Grantham Street residence in anticipation of a need to defend themselves from a possible use of firearms by the occu-

pant or occupants of the house. Admittedly Rudy denied that he went armed to the Grantham Street residence, however, other evidence indicated that he was armed at the time. The jury was justified in concluding that he too was armed from the evidence adduced. We think Rudy was thus not precluded from insisting on an instruction bearing on his right to carry arms to the scene of the difficulty. Additionally, since both convictions depended upon the law of parties, the act by Rene of being armed is likewise attributable to Rudy as a party because he knew Rene was armed and admittedly acquiesced in the act. Any inference to be drawn from such act against Rene would also apply to Rudy.

Under the facts elicited the only testimony regarding the incidents leading up to the shooting came from appellant Rudy Martinez. His testimony paints the deceased as the initial aggressor. The State's theory was that appellants provoked the difficulty by arming themselves and shooting the deceased without justification. No direct evidence in support of that theory was presented, however, and appellants' position essentially became a credibility issue for the jury to be determined upon an instruction on self-defense unburdened by any limitation.

■ If not called for by the facts, a charge on provoking the difficulty constitutes an unwarranted limitation on the right of self-defense. *Dirck v. State,* 579 S.W.2d 198 (Tex.Cr.App.1979) (on rehearing en banc); 29 Tex.Jur.2d, *Homicide,* § 327, p. 635.

■ It is also well settled that a charge on provoking the difficulty should not be given where the only question for determination is who made the first attack. *Walker v. State,* 150 Tex.Cr.R. 421, 201 S.W.2d 823 (1947); *Howle v. State,* 119 Tex.Cr.R. 17, 43 S.W.2d 594 (1931); *Dugan v. State,* 86 Tex.Cr.R. 130, 216 S.W. 161 (1919); *Red v. State,* 39 Tex.Cr.R. 414, 46 S.W. 408 (1898); *Phillips v. State,* Tex.Cr.App., 36 S.W. 86, 36 S.W. 441 (on rehearing) (1896). Stated otherwise, the issue of provoking the

difficulty does not arise from evidence which is merely conflicting as to who made the first attack. *Dugan v. State, supra.*

█ If the State's case is an unprovoked homicide and defendant's case is perfect self-defense, the issue of provoking the difficulty is not in the case; beginning a difficulty is not provoking it. *Adkison v. State,* 116 Tex.Cr.R. 489, 32 S.W.2d 462 (1930); *Cline v. State,* 33 Tex.Cr.R. 482, 27 S.W. 128 (1894).

The Court of Criminal Appeals has consistently held that unless the court's charge places some limitation upon the accused's right of self-defense, such as by charging on provoking the difficulty or otherwise, a charge on the right to carry arms is not necessary. *Williams v. State,* 580 S.W.2d 361 (Tex.Cr.App.1979); *Watson v. State,* 513 S.W.2d 577 (Tex.Cr.App.1974); *De La Cruz v. State,* 490 S.W.2d 839 (Tex.Cr.App. 1973); *Cavazos v. State,* 423 S.W.2d 582 (Tex.Cr.App.1968); *Donaldson v. State,* 372 S.W.2d 339 (Tex.Cr.App.1963); *Pierson v. State,* 160 Tex.Cr.R. 567, 272 S.W.2d 901 (1954); 4 Branch's Ann. Penal Code, 2d ed., § 2129, p. 453.

█ On the other hand, it is equally well settled that if the court's instruction limits the accused's right of self-defense by a charge on provoking the difficulty, then the jury should be advised in a proper instruction under the facts that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty if such instruction is supported by the evidence. *Young v. State,* 530 S.W.2d 120 (Tex.Cr.App.1975); *Williams v. State, supra; Porter v. State,* 152 Tex.Cr.R. 540, 215 S.W.2d 889 (1948); *Hunter v. State,* 137 Tex.Cr.R. 289, 128 S.W.2d 1176 (1939); *Harris v. State,* 116 Tex.Cr.R. 426, 32 S.W.2d 459 (1930); *Allen v. State,* 102 Tex.Cr.R. 441, 278 S.W. 201 (1925); *Frazier v. State,* 100 Tex.Cr.R. 157, 272 S.W. 454 (1925).

█ Resolution of the issue on appeal whether the trial court's action constitutes reversible error turns on whether the evidence raised the issue. The issue of whether the charge on carrying arms should have been given depends on what testimony was presented not what is or is not believed as to the truth of that testimony. *Williams v. State, supra.* We think Rudy's testimony raised evidence requiring a charge on carrying arms.

The language in *Thomas v. State,* Tex.Cr. App., 51 S.W. 1109 (1899) is still appropriate.

It is not a violation of law to seek a party for the purpose of provoking a difficulty. The offense is provoking the difficulty. We have held that a party can arm himself, and go to where a person is, but, after reaching there, if he did not provoke the difficulty, or do some act or make some statement reasonably calculated to provoke the difficulty, he could not be convicted of provoking the difficulty. In other words, if the defendant sought deceased for the purpose of having a friendly talk, and in the course of the conversation, in which he was endeavoring to settle the previous trouble, a difficulty arises between defendant and deceased, the mere fact that he sought deceased for the purpose of settling the previous trouble would not be evidence of the fact that he provoked the difficulty. On the other hand, if appellant sought deceased for the purpose of having a friendly talk, and then and there provoked the difficulty, the law of provoking the difficulty would apply.

*See also Airhart v. State,* 40 Tex.Cr.R. 470, 51 S.W. 214 (1899); *Cartwright v. State,* 14 Tex.App. 486, 502 (1883); *Jones v. State,* 149 Tex.Cr.R. 119, 192 S.W.2d 155 (1946); *Stanley v. State,* 625 S.W.2d 320 (Tex.Cr. App.1982); *Mason v. State,* 88 Tex.Cr.R. 642, 228 S.W. 952 (1921).

█ We think that appellants were not entirely free from blame or wrongdoing in the matter. Nevertheless we fail to find evidence in the record that appellants did any act with intent to produce the occasion and reasonably calculated to provoke the

very difficulty in question.[2] *Crow v. State,* 48 Tex.Cr.R. 419, 88 S.W. 814 (1905). If the act was done in self-defense, the law does not concern itself with other motives. *Shumate v. State,* 38 Tex.Cr.R. 266, 42 S.W. 600 (1897).

As in *Stanley v. State, supra,* only the accused testified as to what took place at the scene of the shooting. And while every circumstance preceding the homicide indicates that appellants went prepared to take the life of the occupant at 103 Grantham Street, we are not permitted to speculate as to what actually occurred. It is not for this court to concern itself with the credibility of appellant's testimony or whether it will appeal to another jury upon retrial.

A charge on provoking the difficulty is applicable in those cases in which the first attack is made by the deceased, but is induced by words and conduct of the accused reasonably calculated and intended to provoke an attack which may be used by him as an occasion for doing harm to his adversary. *Tave v. State,* 620 S.W.2d 604 (Tex.Cr.App.1981).

In every case where the acts and conduct of the accused were the cause of an attack upon him, the issue of whether they were reasonably calculated to provoke the difficulty is a question of fact for the determination of the jury under appropriate instructions from the court. *Garcia v. State,* 522 S.W.2d 203 (Tex.Cr.App.1975). But in the instant case there is no evidence of any acts and conduct of appellants to raise a factual issue for jury determination. We think provoking the difficulty was not in the case, but even where the evidence is questionable, if the self-defense charge is restricted by a charge on provoking the difficulty, appellants are entitled to have the jury instructed as well on the right to carry arms to the scene to protect themselves against possible unlawful attack against them while they attempt to retrieve their property. *Cf. Williams v. State, supra.*

Appellants had a right to arm themselves if they feared trouble, or in anticipation of trouble, with deceased (or any occupant of the Grantham Street residence), and if self-defense was an issue the court was required to charge on their right. *Mitchell v. State,* 50 Tex.Cr.R. 180, 181, 96 S.W. 43 (1906); *Keith v. State,* 50 Tex.Cr.R. 63, 94 S.W. 1044 (1906); *Nix v. State,* 45 Tex.Cr.R. 504, 78 S.W. 227 (1904); *Borden v. State,* 42 Tex.Cr.R. 648, 62 S.W. 1064 (1901).

Because the trial court burdened appellants' self-defense instruction with a charge on provoking the difficulty, we hold that it reversibly erred in refusing to grant the specially requested instruction on the right to carry arms.

The State urges that we should, nevertheless, overrule a long line of cases beginning with *Shannon v. State,* 35 Tex.Cr.R. 2, 28 S.W. 687, 60 Am.St.Rep. 17 (1894), because the law on the right to arm oneself and seek explanation no longer comports with contemporary times. We are urged to adopt the dissenting opinion in *Gassett v. State, supra.*

Only recently in *Young v. State, supra,* and in *Williams v. State, supra,* the Court of Criminal Appeals refused to do what we are asked to do. We are satisfied that the refusal by that court constitutes reaffirmance of the continued vitality of the rule. We defer to that court the task of reevaluating the wisdom of the rule at some later date.

The judgments of the trial court are reversed and the causes are remanded.

---

2. An unlawful intent alone would not abridge the right of self-defense if appellants did not provoke difficulty by words or acts. *Gant v. State,* 55 Tex.Cr.R. 284, 292, 116 S.W. 801 (1909).