

# NUMBER 13-23-00025-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ADRIAN C. GONZALEZ,                                                                                        Appellant,

v.

THE STATE OF TEXAS,                                                                                        Appellee.

## ON APPEAL FROM THE 218TH DISTRICT COURT
## OF ATASCOSA COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Benavides, Tijerina, and Silva
### Memorandum Opinion by Justice Benavides

Appellant Adrian C. Gonzalez appeals his conviction for aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02. By three issues, Gonzalez contends: (1) the evidence was legally insufficient; (2) the jury charge contained erroneous instructions on the law of self-defense; and (3) the trial court erred by admitting extraneous offense evidence. We affirm.

## I.    BACKGROUND[1]

We begin by setting forth the uncontested facts. On March 13, 2020, Robert P. Yglesias and Kristina Carillo threw a party for their minor son, J.G.,[2] and invited Priscilla Trejo, a family friend. In turn, Trejo invited Gonzalez, her friend, and Anthony Townsend to the party. Trejo and Townsend were dating at the time. At the end of the party, Gonzalez went to his car with Townsend and J.G. following behind him. Shortly after Gonzalez entered his car, he shot Townsend twice.

At trial, Yglesias testified that throughout the night of the party, Gonzalez frequently questioned why Townsend was in attendance and referred to Townsend, who is African American, by a Spanish slang term that witnesses identified has the same taboo status as the "n-word." *See also Johnson v. Pride Indus., Inc.*, 7 F.4th 392, 400–01 (5th Cir. 2021) (discussing the term and its meaning). Yglesias informed Townsend that "there was something going on," and it seemed like Gonzalez "wanted to fight" Townsend. Yglesias also asked Gonzalez "to leave several times." Towards the end of the evening, Yglesias and J.G. walked Gonzalez to his car, and Gonzalez pulled out "a little gun . . . from the middle console." Gonzalez requested one last drink before leaving, and

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] J.G. was a minor at the time the offense was committed. The "name of any person who was a minor at the time the offense was committed" is sensitive data that must be redacted from court filings. TEX. R. APP. P. 9.10(a)(3), (b). Both parties failed to appropriately redact J.G.'s name from their briefs which required this Court to take additional steps to ensure compliance with the rules of appellate procedure. *See id.* R. 9.10(d). We encourage counsel to be mindful of the appellate rules on sensitive data in the future.

Yglesias acquiesced. Yglesias testified that Gonzalez left the gun in the car at that time. After Gonzalez finished his final drink, Yglesias observed Gonzalez and Townsend head outside together. "Not even a minute after, [Yglesias] heard a gunshot." Yglesias ran outside and observed Townsend on the ground. He then called 911.

Video footage was admitted into evidence that was captured by Carillo and depicted the partygoers, including Townsend and Gonzalez, holding up shots of tequila while saying, "Salud." Surveillance footage from Yglesias's home security cameras was also admitted into evidence. This footage captured both the interior and exterior of Yglesias's home between 12:50 a.m. and 1:10 a.m. on March 14, 2020. According to the timestamp on the surveillance footage, at 12:53 a.m., Gonzalez was in the kitchen with J.G. and Yglesias. Townsend then entered the kitchen, and Townsend and Gonzalez shook hands. At 12:54 a.m., Gonzalez, Townsend, and J.G. exited Yglesias's home. Gonzalez entered his car and an additional light appeared to flash from within. The three remained there for several moments, their activities shielded from camera by the open car door. At 12:55 a.m., two flashes of light appeared from the window of Gonzalez's car, corresponding to Gonzalez shooting his gun. Townsend collapsed to the ground, J.G. raised his hands and headed back towards the house, and Gonzalez drove away.

J.G. was seventeen at the time of trial. J.G. testified that Townsend "was a nice guy" and that he never witnessed him acting aggressively that evening. J.G.'s initial impression of Gonzalez was that he was "[j]ust another normal person." J.G. testified that he and Gonzalez "smoked a little bit of weed" together at the party. After a certain point,

3

J.G. learned from Yglesias that Gonzalez "had a problem with [Townsend], and he didn't like him." J.G. testified that he and Yglesias "tried to get [Gonzalez] to leave," and they "walked him outside to his car." Once there, they "talked to him for a[ ]while, and then he asked for another shot." J.G. represented that they agreed to this, but before returning inside, Gonzalez "put a clip in his gun and loaded it."

After a while, J.G., Townsend, and Gonzalez left the house together. J.G. explained that he went outside with Gonzalez and Townsend, despite witnessing Gonzalez loading his gun earlier in the evening, because he "didn't want anything bad to happen to [Townsend]," and he "thought that nothing would happen if a kid was there[,] . . . that things wouldn't escalate the way that they did." Once at Gonzalez's car, Townsend and Gonzalez "talk[ed] for a while," and J.G. was "just looking at [his] phone." J.G. testified that Gonzalez and Townsend never seemed to be having an argument during this conversation and that Gonzalez asked Townsend "to go for a ride." J.G. also remembered that Gonzalez told Townsend that "he had a problem with him," to which Townsend reportedly replied, "[W]hat problem, like what—there's no problem. What problem do we have?" J.G. then heard "two gunshots go off."

Townsend acknowledged that he was a former member of the "Crips." At the time of the party, Townsend had recently finished serving an eight-year prison sentence for aggravated robbery and burglary of a habitation. He also acknowledged that he discussed his prior criminal history with Gonzalez during the party. Townsend testified that he accompanied Gonzalez outside because "it was supposed to be a drug purchase."

4

Townsend "was going to give [Gonzalez] the money, get it, and bring it back" to the house. When they got to the car, Townsend gave Gonzalez "[f]ifty dollars," and Gonzalez told Townsend that "they were kicking [Gonzalez] out because of [Townsend]." Townsend asked him why, and Gonzalez shot him. Townsend denied threatening Gonzalez or acting or moving aggressively towards him.

According to Trejo, "[e]verything was fine" at the beginning of the party, and Townsend was getting along with Yglesias and his family. Gonzalez arrived later in the evening after telling Trejo that he and his girlfriend "got into it." At some point, Trejo learned from Yglesias that Gonzalez was making racist comments, but Trejo was not concerned because she did not witness any issues herself. The day after the party, Trejo was visiting Townsend at the hospital when Gonzalez "called and asked what happened." Trejo asked "if he shot [her] boyfriend," and Gonzalez responded "that he didn't remember."

Richard Priest, the Chief of Police in Lytle, Texas, testified that two shell casings were recovered from the scene of the crime. Chief Priest also testified that he recovered the video surveillance footage from Yglesias's home security cameras with Yglesias's help. Chief Priest testified that Yglesias "smelled like" alcoholic beverages and potentially drugs, as well.

David Lopez, a police officer with the Lytle Police Department, testified that he interviewed Townsend at the hospital the day after the party. Officer Lopez also testified that he recovered Townsend's clothing from the hospital. According to Officer Lopez, he

did not discover any weapons, money, drugs, or contraband in Townsend's personal belongings. A report authored by several different law enforcement officers, including Officer Lopez, was admitted into evidence. In the supplemental narrative specifically authored by Officer Lopez, Townsend recounted that Gonzalez accused Townsend of being the impetus for his removal from the party prior to shooting him. Townsend was not sure whether Gonzalez was on drugs and "felt as if [Gonzalez] was hallucinating and was seeing stuff that wasn't there." Townsend "tried to calm [Gonzalez] down and then all of a sudden [Gonzalez] just pulled out the gun." Townsend denied threatening Gonzalez.

Officer Lopez also spoke to Yglesias, who relayed that Gonzalez "was making racial slurs, . . . but when [Townsend] came around, [Gonzalez] and [Townsend] would talk as if they were friends." J.G. also reported to Officer Lopez that "the shooting was out of nowhere" and "the two weren't even arguing."

Over Gonzalez's objection, Himanshu Patel testified about his familiarity with Gonzalez. One day in 2007, Patel was in downtown San Antonio with some friends. Patel explained that "a few guys made racist comments to us, and then an altercation happened." Patel specified that his nose was broken in the ensuing fight. Three complaints and three convictions for assault bodily injury were admitted into evidence, corresponding to Patel's testimony of the assaults committed against him and his friends by Gonzalez.[3] The judgments reflect that Gonzalez pleaded no contest to the allegations

---

[3] Although each information specifically tracked the hate crime enhancement language, the actual judgment did not include a finding that Gonzalez intentionally assaulted Patel or his friends because of their race, color, or national origin or ancestry. *See* TEX. CODE CRIM. PROC. ANN. art. 42.014(a) (requiring the trial

6

contained within the complaints, and he was sentenced to six months in county jail.

Gonzalez testified in his own defense about the events of that evening. According to Gonzalez, he and Townsend initially had no issues. Although Townsend revealed to Gonzalez that he had a recent criminal history, Gonzalez testified that he was unaware of Townsend's gang affiliation. Gonzalez explained that he had been drinking at the party, but that Yglesias "was really adamant" and "kept trying to offer [him] shots." After about an hour, Gonzalez was ready to leave the party and noticed that Townsend was "looking at [him] kind of like . . . he had like animosity towards [Gonzalez]."

Gonzalez stated that when he left, he "couldn't understand . . . why [Townsend] followed [Gonzalez] out." While at the car, Gonzalez testified that Townsend "was a little erratic." Gonzalez explained that when he entered his car, Townsend got "in the doorway" so that he could not close the car door. Gonzalez then felt like Townsend was "[t]hreatening" him by "[k]ind of, you know, asking me for something I didn't have, money." Townsend was talking to Gonzalez with his right hand, and with "[h]is left hand, he kind of reached down" to his pocket. Gonzalez thought Townsend was reaching for a gun, and so Gonzalez reached for the gun in his car and shot Townsend twice.

Gonzalez testified that he did not know the current whereabouts of the gun he used to shoot Townsend, as "[i]t was misplaced." Gonzalez also acknowledged that he did not contact law enforcement after this incident, as he did not believe it was important to do

---

court in some circumstances to include an affirmative finding of fact in the judgment if it determines "that the defendant intentionally selected the person against whom the offense was committed . . . because of the defendant's bias or prejudice against a group identified by race, color, . . . national origin or ancestry," or other protected characteristics).

so. Gonzalez also denied speaking with Trejo about the incident the following day.

Lastly, two of Gonzalez's friends testified to his non-racist character. The jury found Gonzalez guilty of aggravated assault with a deadly weapon but found that the State had not proved beyond a reasonable doubt that the crime was racially motivated. The trial court sentenced Gonzalez to sixteen years' imprisonment, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Gonzalez contends the evidence was insufficient to show he did not act in self-defense.

### A. Standard of Review & Applicable Law

In determining the sufficiency of the evidence to overcome the issue of self-defense, we ask whether "[t]here is sufficient evidence in the record to rationally support the jury's rejection of appellant's version of the events." *Braughton v. State*, 569 S.W.3d 592, 611 (Tex. Crim. App. 2018). Specifically, "we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the charged offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person is justified in using deadly force against another "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force; or . . . to prevent the other's imminent commission of," among other things, "robbery." TEX. PENAL

8

CODE ANN. § 9.32(a)(2). In raising the issue of self-defense, a defendant bears the initial "burden of production, which requires the production of some evidence that supports the particular defense," and "the State then bears the burden of persuasion to disprove the raised defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). "The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Id.*

"[T]he issue of self-defense is an issue of fact to be determined by the jury." *Saxton*, 804 S.W.2d at 913. Thus, in reviewing the issue of self-defense on appeal, it is improper "to apply [our] own view of the weight and credibility of the witness testimony, thereby substituting [our] own view for that of the jury." *Braughton*, 569 S.W.3d at 610. Nonetheless, "[a] jury's decision to reject witness testimony must be rational in light of the totality of the record, and any underlying inferences used to reject that testimony must be reasonable based upon the cumulative force of all of the evidence." *Id.* at 611. "Moreover, a jury is not permitted to disregard undisputed objective facts that can support only one logical inference." *Id.* However, "[a] jury is permitted to reject even uncontradicted defensive testimony, so long as its rejection of that evidence was rational in light of the remaining evidence in the record and is not contradicted by indisputable objective facts." *Id.* at 612. "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory." *Zuliani*, 97 S.W.3d at 594.

**B.    Analysis**

Gonzalez argues the evidence was insufficient to support his conviction because

"Gonzalez's self-defense claim was supported by . . . evidence from which the jury could have found that the State failed to disprove Gonzalez's defense beyond a reasonable doubt." But as discussed above, this is not the standard by which we review a claim of self-defense on appeal. Rather, the evidence need only show that a rational jury could have rejected Gonzalez's self-defense claim. *See Braughton*, 569 S.W.3d at 611.

The record was replete with evidence that showed: (1) Gonzalez did not actually believe that his use of deadly force was necessary; and/or (2) Gonzalez's subjective apprehension of danger was unreasonable. Notably, Gonzalez was the only witness that testified he acted in self-defense, and the jury was not obligated to believe him. *See Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023). His testimony, even if believed, established that Townsend asked Gonzalez for money while one of his hands was in his pocket. The jury was within its discretion in determining that Gonzalez's belief that this was a life-or-death scenario was unreasonable. *See id.*

Yglesias and J.G. both witnessed Gonzalez loading the gun in his car prior to the shooting. Additionally, J.G. testified that Gonzalez "said that he had a problem with [Townsend]," and then shot Townsend.[4] Townsend also testified that Gonzalez blamed him for being kicked out of the party, and Townsend denied threatening or acting aggressively towards Gonzalez in any way at the time of the shooting. Further, Gonzalez

---

[4] In his reply brief, Gonzalez argues that J.G. "was not credible" and that only Gonzalez's interpretation of the silent surveillance video—i.e., that Townsend was attempting to rob Gonzalez—is rational. It is simply not appropriate for this Court to independently determine the credibility of the witnesses or the weight of the evidence. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.)).

10

immediately fled the scene of the crime, did not call the police, and "misplaced" the gun that was used to shoot Townsend. This circumstantial evidence, although borne out after the fact, is indicative of Gonzalez's guilty conscience. *See Bigby v. State*, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994) ("Evidence of flight . . . shows a consciousness of guilt of the crime for which the defendant is on trial."); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (concluding that appellant's "secretive[]" actions after a robbery constituted some evidence indicating guilt).

Gonzalez argues that "[b]ecause the State focused primarily on proving Gonzalez was racist, which the jury rejected, it ignored disproving Gonzalez's defensive theory." There are certainly other motives that could be attributed to this shooting besides racial animus, but it would be inappropriate for us to speculate on those motives. The jury's reasoning behind its rejection of the hate crime enhancement is irrelevant. The State had only two burdens it needed to satisfy to obtain a conviction; it first needed to prove that Gonzalez committed aggravated assault with a deadly weapon, and then it needed to persuade the jury that he did not act in self-defense. *See Rankin v. State*, 617 S.W.3d 169, 181–82 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). It did not have an additional burden to prove *why* he shot Townsend. *See id.* Accordingly, we conclude the evidence was sufficient to support the jury's rejection of Gonzalez's theory of self-defense.

We overrule Gonzalez's first issue.

### III.    JURY CHARGE ERROR

By his second issue, Gonzalez argues that the trial court's jury instruction on self-

11

defense was egregiously harmful.

**A.  Standard of Review & Applicable Law**

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). But when, as here, no objection is made to the alleged error in the jury charge, reversal is not required unless the error resulted in egregious harm. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). "Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id.*

**B.  Presumption of Reasonableness**

Gonzalez first contends the jury charge was erroneous because it failed to track the language in § 9.32(b) of the penal code regarding whether his apprehension of danger was presumptively reasonable. *See* TEX. PENAL CODE ANN. § 9.32(b).

**1.  Error**

"[I]f there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court

12

is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." *Id.* § 2.05(b)(1).

> The actor's belief . . . that the deadly force was immediately necessary . . . is presumed to be reasonable if the actor:
>
> (1) knew or had reason to believe that the person against whom the deadly force was used:
>
> > (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
> >
> > (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
> >
> > (C) was committing or attempting to commit [aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery];
>
> (2) did not provoke the person against whom the force was used; and
>
> (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.* § 9.32(a)(2)(B), (b). The trial court did not include this language in the jury charge.

Gonzalez suggests that the presumption in § 9.32(b) is applicable because: (1) he believed Townsend was attempting to rob him; (2) he did not provoke Townsend; and (3) he was not otherwise engaged in criminal activity. *See id.* § 9.32(b). The State argues that "there was no evidence to support" the presumption, "as [Gonzalez] never testified that he was placed in fear of imminent serious bodily injury or death, merely that he didn't know what Townsend had in his pocket." First, Gonzalez specifically testified at trial, "I

13

was in fear for my life, yes, sir." Second, the court of criminal appeals held in *Cranford v. State* that when an "appellant moved his hand to his back pocket in such a manner as to cause the prosecuting witness to believe he was in possession of a pistol," the victim's "fear was justified." 377 S.W.2d 957, 959 (Tex. Crim. App. 1964). In that case, the evidence was sufficient to sustain the defendant's conviction for robbery. *Id.* Similar evidence was raised in this case concerning Townsend's actions, supporting the first element of the presumption. *See id.*; TEX. PENAL CODE ANN. § 9.32(b). The State also concedes that there was no evidence that Gonzalez provoked Townsend. Accordingly, the second element was established. *See* TEX. PENAL CODE ANN. § 9.32(b).

Further, although the evidence was strong, it did not clearly establish beyond a reasonable doubt that Gonzalez was engaged in any criminal activity at the time of shooting. *See id.* § 2.05(b)(1); *cf. Reyna v. State*, 597 S.W.3d 604, 606–07 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that appellant was not entitled to a presumption-of-reasonableness instruction, as he admitted to selling and possessing cocaine at the time the offense occurred). Accordingly, the trial court erred by omitting a presumption-of-reasonableness instruction. *See* TEX. PENAL CODE ANN. § 2.05(b)(1).

### 2. Harm

However, because Gonzalez did not request the inclusion of the presumption in the jury charge, we turn now to whether Gonzalez was egregiously harmed by its omission. *See Alcoser*, 663 S.W.3d at 165.

14

### a. Entire Jury Charge

"As to this factor, we consider the entire jury charge to determine if 'anything in the balance of the jury charge either exacerbated or ameliorated' the complained of error." *State v. Lausch*, 651 S.W.3d 546, 556 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (quoting *French v. State*, 563 S.W.3d 228, 236 (Tex. Crim. App. 2018)).

The jury charge properly provided that Gonzalez was presumed innocent. And even if the State proved that Gonzalez's conduct met each element of aggravated assault with a deadly weapon, the jury charge further instructed that he still was "not required to prove self-defense. Rather, the state must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct."

Additionally, the jury charge correctly instructed that a "'[r]easonable belief' means a belief that an ordinary and prudent person would have held in the same circumstances as the defendant." *See* TEX. PENAL CODE ANN. § 1.07(a)(42). The correct charge would have also "ask[ed] the jury to decide whether, in light of the circumstances of the case, appellant was entitled to a presumption of reasonableness as to his asserted belief that the use of deadly force was immediately necessary." *See Villarreal v. State*, 453 S.W.3d 429, 434 (Tex. Crim. App. 2015). The correct charge would have allowed the jury to reject the presumption if it nonetheless concluded that "an ordinary and prudent person" would not have felt that deadly force was necessary in that moment. *See* TEX. PENAL CODE ANN. § 1.07(a)(42). We conclude that this factor weighs slightly in favor of egregious harm. *See Villarreal*, 453 S.W.3d at 434 (affording "less weight to this factor than did the court of

15

appeals because . . . a complete jury charge on the presumption, in addition to describing the legal force of the presumption itself, would have also permitted the jury to conclude that the presumption was inapplicable").

### b.    State of the Evidence

Self-defense was the primary contested issue at trial. But "the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Id.* at 436. "Had it been properly given to the jury, the omitted instruction would have permitted the jury to disregard the presumption if it concluded, among other things, that appellant had no reason to believe that" Townsend "was attempting to commit" one of the crimes listed in Texas Penal Code § 9.32(a)(2)(B) "or that appellant was otherwise engaged in criminal activity at the time of the" shooting. *See id.* at 435. And when conducting an egregious-harm analysis, "a reviewing court must evaluate the likelihood, considering the record as a whole, that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence." *Hollander v. State*, 414 S.W.3d 746, 751 (Tex. Crim. App. 2013); *see Allen v. State*, 253 S.W.3d 260, 267–68 (Tex. Crim. App. 2008) ("[I]n an egregious-harm analysis, it is appropriate to consider the plausibility of the evidence raising the defense, as at least one factor among others."). Critically, the only evidence that raised the presumption of reasonableness was Gonzalez's testimony, which was the same and only evidence that raised the issue of self-defense. But "the jury's rejection of . . . appellant's self-defense claim demonstrates that the jury simply did not believe his claim that he reasonably believed deadly force was

16

immediately necessary." *See Wooten v. State*, 400 S.W.3d 601, 609 (Tex. Crim. App. 2013).

Further, the term "criminal activity," as used in § 9.32, "can be broadly construed to comport with the generally understood concept that it would encompass any activity that constitutes a crime." *Barrios v. State*, 389 S.W.3d 382, 393 (Tex. App.—Texarkana 2012, pet. ref'd). By his own admission, Gonzalez was drinking alcohol prior to the shooting. The surveillance footage and Carillo's video recording from the evening depict Gonzalez drinking from a beer bottle and holding a shot of hard liquor, respectively. Yglesias testified that he asked Gonzalez to leave "six or seven times" throughout the night. After being asked to leave, Gonzalez would "calm down for a little bit," and the two of them would "go back inside, maybe have another shot, drink a beer, and then it would continue later on." Yglesias specified that most people at the party were drunk, and that Gonzalez and Townsend took "[s]everal" shots together. J.G. testified that he and Gonzalez "smoked a little bit of weed" together earlier in the evening. Gonzalez agreed that J.G. smoked "synthetic weed" that evening but denied smoking any himself.

In the surveillance footage, Gonzalez's headlights flashed as he approached it, indicating that it was unlocked, and additional lights flashed from within the car after he entered it, indicating that he was operating it. *See Maciel v. State*, 631 S.W.3d 720, 724 (Tex. Crim. App. 2021) ("We have . . . defined 'to operate' as 'to exert personal effort to cause the vehicle to function.'"). From Townsend's testimony, the jury could have believed the alleged drug deal was merely a ruse to entice Townsend to Gonzalez's car, steal his

money, and shoot him, or that Gonzalez actually planned to exchange drugs with Townsend but then decided to shoot him. In any factual scenario, there was plenty of evidence to suggest that Gonzalez was engaging in other criminal activity at the time of the shooting; namely, driving while intoxicated, *see* TEX. PENAL CODE ANN. § 49.04(a), public intoxication, *see id.* § 49.02, theft, *see id.* § 31.03, or possession with intent to sell a controlled substance, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), and the presumption would therefore not apply. *See* TEX. PENAL CODE ANN. § 9.32.

Further, "[b]y its own terms, the presumption applies under [§] 9.32(b) only if the defendant first harbors a subjective belief that the use of deadly force was immediately necessary to defend himself from another's use or attempted use of deadly force." *Lozano v. State*, 636 S.W.3d 25, 33 (Tex. Crim. App. 2021). Gonzalez testified that "[t]here was never animosity" between him and Townsend, and that "when we were outside, . . . we were fine." However, Gonzalez also testified that Townsend's behavior turned threatening at the very end of the evening. Nearly every other witness that testified indicated that Gonzalez was a source of tension during the evening, not Townsend. Given the state of the evidence, it is highly likely that the jury would have concluded the presumption was inapplicable. *See Hollander*, 414 S.W.3d at 751; *see also Polk v. State*, No. 13-18-00347-CR, 2019 WL 3721345, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that this factor weighed against a finding of egregious harm because "[t]he omitted instruction would have

18

permitted the jury to disregard the presumption if it concluded, among other things, that Polk had no reason to believe that Ruiz was attempting to commit murder").

We conclude this factor weighs heavily against an egregious harm finding.

### c.  Arguments of Counsel

It cannot be denied that the State argued vociferously that Gonzalez's apprehension of danger was unreasonable. In closing, the State argued as follows:

> Is it reasonable? Is it reasonable if you're sitting in your car at the time and some person who you've hung out with all night and not had a single problem with all night, who is not approaching you with a weapon in his hand or something, he has his hands in his pocket. Is that a reasonable belief that at that moment you need to shoot that person because he's going to attack your life, he's going to take your life? Is that a reasonable belief at that time? Absolutely not.

And on rebuttal:

> When his lawyer presented arguments, what did they tell you? They told you that your burden is to go back there and figure out what was reasonable from [Gonzalez]'s point of view. When we read the Court's instruction, that's not what it says at all. It says you have to figure out whether he has a reasonable belief. And what is a reasonable belief? Means that of an ordinary and prudent person would have if he was in [Gonzalez]'s position, not what [Gonzalez] would have.

But the State also strongly urged that Gonzalez lacked credibility. For instance, the State argued it was "ridiculous" to suggest that Townsend would rob Gonzalez in front of "witnesses and security cameras," and that the defense's theory "that they somehow all planned for this thing to happen, and that [Townsend] is willing . . . to go outside and try to rob this guy and get [him]self shot to frame [Gonzalez] for some racist assault" made "absolutely no sense." *See Villarreal*, 453 S.W.3d at 441 (concluding that this factor

weighed against egregious harm because the State's "arguments focused primarily on appellant's lack of credibility"). Nonetheless, because the State also frequently touched on the reasonableness of Gonzalez's belief in its argument, this factor weighs slightly in favor of an egregious harm finding. *Cf. id.*

### d. Any Other Relevant Information

As to the fourth *Almanza* factor, "we note the absence in the record of a note from the jury during deliberations expressing" any inquiry into the issue of reasonableness. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (plurality op.). We further note that competent counsel may have specifically wanted the jury not to focus on this issue and may have deliberately failed to request a jury instruction as a result. *See Land v. State*, 943 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (considering whether "competent counsel would have" desired the jury instruction in question when analyzing jury charge error); *cf. Posey v. State*, 966 S.W.2d 57, 62–63 (Tex. Crim. App. 1998) (concluding that a trial court has no duty to sua sponte instruct the jury on defensive issues raised by the evidence and explaining that "a contrary holding . . . could impose on defendants unwanted defensive issues in the charge"). Not only could the inclusion of the instruction have had the undesirable effect of focusing the jury's deliberations on the ample evidence of Gonzalez's unlawful activity at the time of the shooting, it could have also indelibly connected in the jurors' minds the reasonableness of Gonzalez's theory of self-defense with the criminal activity in which he was engaged. *See, e.g.*, *Harris v. State*, 668 S.W.3d 83, 93, 96 (Tex. App.—Houston [1st

Dist.] 2022, pet. ref'd) (en banc) (detailing that when provided with a presumption-of-reasonableness instruction, the jury queried whether "the admitted commission of a crime, sale of a controlled substance, negate[d] the basis of a claim of self-defense" and concluding that the trial court did not err by simply referring the jury back to its charge in response). The jury instruction already contained a typical extraneous offense evidence instruction limiting the jury's consideration of Gonzalez's unindicted criminal activity to only that which was proved beyond a reasonable doubt and then only for the purpose of determining Gonzalez's "state of mind, motive, or for the purpose of refuting, if it does refute, a defensive theory of the defendant, and for no other purpose." But defense counsel may have wanted to refrain from highlighting for the jury the ways in which the evidence of Gonzalez's drinking and drug use could be used to rebut their defensive theory. *See id.* We conclude that this factor weighs against a finding of egregious harm.

Accordingly, given the strength of the evidence to prove both that Gonzalez did not act in self-defense and that the presumption of reasonableness did not apply to the facts of this case, and given that the omission of the instruction could have served to lessen the impact of the extraneous offense evidence, "we cannot conclude that there is a substantial risk that appellant was harmed as a result of the omission of the instruction, or that the addition of a presumption-of-reasonableness instruction likely would have altered the outcome as to the question of whether he acted in self-defense." *See Villarreal*, 453 S.W.3d at 439. Accordingly, we overrule this sub-issue.

21

## C.    Provocation Instruction

Gonzalez also contends that the trial court erred by including instructions on the issue of provoking the difficulty and by not submitting additional instructions on the elements of provocation.

### 1.    Error

"[A] defendant may forfeit his right to self-defense if he provokes the attack." *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016). A charge on provocation is required when there is sufficient evidence to show:

> (1)    that the defendant did some act or used some words that provoked the attack on him,
>
> (2)    that such act or words were reasonably calculated to provoke the attack, and
>
> (3)    that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.

*Id.* at 197 (citing *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998)). The State concedes that a charge on provocation was not warranted in this case.

The jury charge mentioned provocation in three separate places. Under the subheading "Relevant Statutes," the jury charge stated that "[s]elf-defense does not cover conduct if the actor provoked the use, or attempted use, of unlawful force against the defendant." Under the subheading titled "Failure to Retreat," the jury charge provided that the jury could not consider Gonzalez's failure to retreat prior to shooting Townsend unless it found both that he: (1) "did not provoke" Townsend; and (2) "was not engaged in

22

criminal activity at the time he used the deadly force." And under the "Application of Law to Facts" subheading, the jury charge permitted the jury to discredit Gonzalez's theory of self-defense if it found, among other things, that Gonzalez "provoked . . . Townsend['s] use, or attempted use, of unlawful force."

In *Reeves v. State*, although the court of criminal appeals agreed that the appellant "suffer[ed] actual harm when his self-defense claim was improperly limited by the inclusion of an unwarranted provocation instruction," 420 S.W.3d 812, 814 (Tex. Crim. App. 2013), the Court differentiated between the provocation instructions that were properly before the jury and those that were improperly before the jury. *Id.* at 819. Specifically, even though provocation was not part of the law applicable to the case, the Court stated that "[t]he provocation that was properly before the jury was provocation as an element of self-defense." *Id.* at 819; *see* TEX. PENAL CODE ANN. § 9.31(b). The *Reeves* Court concluded that the following mentions of provocation in the jury charge were properly before the jury:

- The defendant's belief that the force was immediately necessary is presumed to be reasonable if the defendant . . . did not provoke the person against whom the force was used.

- If you find or believe the defendant had a right to be present at the location where the deadly force was used, that the defendant had not provoked the person against whom the deadly force was used, and that the defendant was not engaged in criminal activity at the time the deadly force was used, you are not to consider whether the defendant failed to retreat.

*Reeves*, 420 S.W.3d at 817, 819 ("While one might take issue with the cumbersome (even obtuse) nature of the instruction, the information contained within it is accurate.").

23

Similarly, in this case, to the extent the trial court was merely tracking the applicable statutes, we conclude that the trial court did not err by simply discussing provocation as an element of self-defense. *See* TEX. PENAL CODE ANN. §§ 9.31(b)(4), 9.32(c); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue.").

However, we will assume without deciding that the final mention of provocation in the application of law to facts section was erroneous.

### 2. Harm Analysis

Again, because Gonzalez did not object to the instruction on provocation, we must analyze the entire record to determine whether Gonzalez was egregiously harmed. *See Alcoser*, 663 S.W.3d at 165.

### a. The Entire Jury Charge

In general, provocation instructions that cause harm include both an abstract and an application paragraph on the law of provocation. *See, e.g.*, *Elizondo*, 487 S.W.3d at 206–07; *Reeves*, 420 S.W.3d at 817–18. But here, as detailed above, provocation was barely mentioned.

Gonzalez argues that "[t]he unwarranted provocation instruction failed to tell the jury the required elements under provocation and that it is the State's burden to prove provocation beyond a reasonable doubt." The application paragraph did state that it was the State's burden to prove the issue of provocation "beyond a reasonable doubt."[5]

_____

[5] Specifically, the jury charge recites: "To decide the issue of self-defense, you must determine

24

However, we agree that without the elements of provocation before it, the jury was free to speculate on what might constitute provocation. Nonetheless, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Although the jury was permitted to find against Gonzalez's self-defense theory if it found that Gonzalez provoked Townsend and was not provided guidance on the doctrine of provoking the difficulty, the fact that provocation was so infrequently mentioned in the jury charge may have ameliorated against any potential harm rather than exacerbated it. If instead the jury charge included the elements of provocation, the jury charge would have "implied that there was some evidence to support every element of the provocation doctrine when there was not." *See Reeves*, 420 S.W.3d at 819 (quoting *Reeves v. State*, No. 01-10-00395-CR, 2012 WL 5544770, at *6 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012) (mem. op., not designated for publication)); *cf. Mendoza v. State*, 349 S.W.3d 273, 284 (Tex. App.—Dallas 2011, pet. ref'd) ("Submission of substantial and detailed instructions on provoking the difficulty severely handicapped appellant's right to have the jury consider and evaluate the merits of his defense of self-defense unencumbered by the provocation limitation.").

However, this erroneous charge appeared in the application paragraph, which is

---

whether the state has proved, beyond a reasonable doubt, at least one of the following four elements." Among those four elements is "the defendant provoked . . . Townsend['s] use, or attempted use, of unlawful force against the defendant."

"the 'heart and soul' of the jury charge." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). We conclude that this factor weighs in favor of egregious harm.

### b.      The State of the Evidence

As we discussed above, the evidence to support the State's theory that Gonzalez attacked Townsend unprovoked was strong. Moreover, when "the State's case is an unprovoked [attack] and [the] defendant's case is perfect self-defense, the issue of provoking the difficulty is not in the case; beginning a difficulty is not provoking it." *Martinez v. State*, 653 S.W.2d 630, 637 (Tex. App.—San Antonio 1983, pet. ref'd). In other words, neither party relied on provocation. The State's theory of the case was that Gonzalez attacked Townsend unprovoked, and Gonzalez's theory of the case was that Townsend attacked Gonzalez unprovoked; if the jury believed either party, provocation would not have factored into its decision-making. We conclude this factor weighs against egregious harm.

### c.      Arguments

During arguments, the parties primarily focused on the reasonableness of Gonzalez's belief and Gonzalez's credibility, not whether Gonzalez provoked Townsend's use or attempted use of force. Indeed, the parties each focused their arguments on their respective theories that the other party was the initial aggressor. The State argued, "Is there any evidence, is there a single piece of evidence that [Townsend] used any unlawful force against him, that he used any force against him at all? The only evidence is he walked up with his hand in his pocket." While the defense argued, "This is a case of

fear . . . . It's a case of fingers . . . in the pocket, not knowing what's there, . . . and [Gonzalez] did what any person would do—or reasonable person would do under those circumstances, and he fired to disable [Townsend] and get away."

Because neither party focused on nor even discussed provocation during arguments, we conclude this factor weighs against a finding of egregious harm. *See Cuevas v. State*, No. 14-22-00561-CR, 2024 WL 1625753, at *14 (Tex. App.—Houston [14th Dist.] Apr. 16, 2024, no pet. h.) (concluding that inclusion of provocation instruction was harmless under the "some harm" standard as the focus of the evidence and argument was on appellant's credibility and the reasonableness of his apprehension of danger, rather than on provocation); *see also Polk*, 2019 WL 3721345, at *8 (concluding no egregious harm occurred in providing an erroneous provocation instruction when "[t]he issue was not addressed, much less emphasized . . . by either party").

### d.      Any Other Relevant Information

Defense counsel mentioned provocation in passing during voir dire while discussing the law on self-defense, stating, "The person did not provoke the other person against who[m] he used the force, and the person was not authorized [sic] otherwise engaged in criminal activity[.] . . . [D]oes anybody have any questions about self-defense?" He then moved on to another topic. Nothing perhaps encapsulates the role that provocation played in this case more than this not entirely comprehensible statement; it was an afterthought that neither the parties, the court, nor the evidence focused on. Because there is no other relevant information in the record that shows the jury's verdict

27

was improperly influenced by this alleged error, we conclude that the fourth factor does not weigh in favor of finding that Gonzalez suffered egregious harm. *See Arevalo v. State*, 675 S.W.3d 833, 861 (Tex. App.—Eastland 2023, no pet.).

Because the final three *Almanza* factors weigh against a finding of egregious harm, we conclude that they outweigh the sole factor that weighs in favor. We conclude that neither complained-of jury charge error egregiously harmed Gonzalez, and we overrule his second issue.

## IV.     EXTRANEOUS OFFENSE EVIDENCE

By his third and final issue, Gonzalez argues the trial court erred by admitting certain extraneous offense evidence.

## A.     Standard of Review & Applicable Law

"As a general rule an accused is entitled to be prosecuted on the accusation contained in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally." *Bush v. State*, 628 S.W.2d 441, 443 (Tex. Crim. App. 1982); *see* TEX. R. EVID. 404. Thus, "[e]vidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021). For instance, "evidence showing motive is admissible even though it would also show the commission of collateral or extraneous offense[s]." *Bush*, 628 S.W.2d at 444. "[M]otive is not an essential element of a crime but . . . evidence of motive is always admissible because it is relevant as a circumstance tending to prove

28

the commission of an offense." *Id.* "To be admissible, however, the evidence must fairly tend to raise an inference in favor of the existence of the motive." *Ricondo v. State*, 657 S.W.2d 439, 444 (Tex. App.—San Antonio 1983, no pet.).

> For extraneous-offense evidence to be admissible under both Rule 404(b) and Rule 403, that evidence must satisfy the following two-prong test:
>
> - Is the extraneous offense evidence relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character?
>
> - Is the probative value of the evidence sufficiently strong so that it is not substantially outweighed by unfair prejudice?

*Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004).

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under this standard, we do not reverse a trial court's decision unless it lies outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469. "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz*, 279 S.W.3d at 344.

29

**B.      Analysis**

Gonzalez argues that evidence of his prior assault convictions was inadmissible because it was: (1) irrelevant and admitted solely for propensity purposes, *see* TEX. R. EVID. 404(b), and (2) more prejudicial than probative, *see id.* R. 403. We address these contentions in turn.

**1.      Rule 404(b)**

To be admissible under Rule 404(b), the State only needed to show that the extraneous offense was "relevant to a material, non-propensity issue." *See Devoe*, 354 S.W.3d at 469. Here, the State was required to demonstrate that the crime was racially motivated to enhance the punishment range. *See* TEX. PENAL CODE ANN. § 12.47(a); TEX. CODE CRIM. PROC. ANN. art. 42.014(a). Therefore, evidence that Gonzalez had previously made racially charged comments before attacking members of a race other than his own was relevant to show that racial animus was a motive for Gonzalez to shoot Townsend. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) ("[T]he extensive evidence of appellant's hatred for African-Americans . . . is evidence that appellant had a motive to kill Byrd because of his race."); *Lolmaugh v. State*, 514 S.W.2d 758, 759 (Tex. Crim. App. 1974) (holding that proof that defendant shot his wife's prior lover "would tend to show his state of mind toward a class, lovers of his wife, and this state of mind or motive was such that he would shoot members of that class"); *Chaddock v. State*, 203 S.W.3d 916, 924 (Tex. App.—Dallas 2006, no pet.) (concluding that evidence of a prior racially-motivated assault was admissible to prove motive in the instant case). Accordingly, this evidence

30

was relevant to a material, non-propensity issue. *See* TEX. R. EVID. 404(b).

## 2. Rule 403

As a rule of inclusion, "Rule 403 favors the admission of relevant evidence over its exclusion." *Hall v. State*, 663 S.W.3d 15, 34 (Tex. Crim. App. 2021). "A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

### a. Probative Value

This first factor "looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *Id.* Here, evidence that Gonzalez was intolerant of races other than his own was probative of motive in the instant case. *See King*, 29 S.W.3d at 565. However, the assaults occurred approximately thirteen years prior to the March 14, 2020 shooting. Therefore, "the remoteness of the extraneous-offense evidence significantly lessens its probative value." *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd).

### b. Irrational Impression

"The fact that an item of evidence shows the defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds." *Inthalangsy*, 634 S.W.3d at 758. "'Unfair prejudice' refers only to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Mechler*, 153 S.W.3d at 440.

31

"[I]t is true that an extremely similar extraneous offense always carries the potential to impress the jury of a defendant's character conformity, an impression the law seeks to avoid." *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). "However, the impermissible inference of character conformity can be minimized through a limiting instruction." *Id.* Such an instruction was given here, both in the jury charge and after Patel finished testifying. Accordingly, any potential irrational impression the evidence may have had on the jury was minimized. *See id.*

### c. Time to Develop

This factor considers "whether the jury w[ill] be distracted from consideration of the charged offense during the time needed to present" the questionable evidence. *Mechler*, 153 S.W.3d at 441. Patel's testimony spans less than twelve pages of the reporter's record, while the entire guilt-innocence phase of the trial, not including opening and closing statements, covered approximately 400 pages. *See Lane*, 933 S.W.2d at 520 (concluding that this factor weighed in favor of admission when the time needed to develop the evidence "constituted less th[a]n one-fifth of the testimony in the State's case-in-chief"). The State also asked Gonzalez several questions about this incident, but overall, it took the State little time to develop this evidence.

### d. Need for the Evidence

Whether the crime in this case was racially motivated was a hotly contested issue at trial; indeed, it was an issue the State sought to prove beyond a reasonable doubt. Therefore, this evidence was of critical importance to the State. *See id.* at 521 (holding

that extraneous offense evidence "was of critical importance to the State" when it was used to prove "a hotly contested issue").

Given our resolution of the other factors, we conclude that, on balance, the probative value of the extraneous offense evidence was not substantially outweighed by its prejudicial effect. *See* TEX. R. EVID. 403; *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("The rule envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001))). Accordingly, the trial court did not err by admitting this evidence. *See Dabney*, 492 S.W.3d at 318. We overrule Gonzalez's final issue.

## V.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
23rd day of May, 2024.

33